## SMITH *v.* MACK.

Opinion delivered December 23, 1912.

1. USURY—COMMISSION TO LENDER'S AGENT.—To sustain the plea of usury, it must appear that excessive interest was paid to the lender, or that a bonus or commission was paid to the agent of the lender

with his knowledge, or under circumstances from which his knowledge will be presumed, which commission, when added to the interest paid or to be paid to the lender, would exceed the lawful rate. (Page 661.)

2.  SAME—BURDEN OF PROOF.—The burden of proof is upon the party who pleads usury to show clearly that the transaction is usurious. (Page 662.)

Appeal from Greene Chancery Court; *Charles D. Frierson,* Chancellor; affirmed.

### STATEMENT BY THE COURT.

C. A. Mack brought this suit against appellants to recover $10,642.50 on two promissory notes and interest, and to foreclose a mortgage upon lands in Greene and Poinsett counties, given to secure the payment thereof.

The answer admits the execution of the notes and mortgage, and pleads usury in bar of the recovery, alleging that appellee agreed to make said loan, charging interest at the rate of 10 per cent. per annum from date until paid and an additional sum of $1,000 as bonus for the forbearance and use of the money, which was paid to his agent and attorney, who delivered the amount of the loan to appellants, the money having been deposited by Mack with his said agent, D. G. Beauchamp; the said Mack having full knowledge and consenting for his said agent to demand and receive said $1,000; alleged further that the notes sued upon are void for usury and the mortgage likewise, and prays that the same be surrendered up and cancelled, and the cloud upon their title removed.

It appears from the testimony that appellants had been trying to procure a loan of about the sum of money which they finally borrowed, with which to purchase certain lands in Greene and Poinsett counties, the acreage of which had not been exactly determined; that J. A. Smith had offered to pay, to any one who would procure them the loan of the amount upon five year's time, $1,000 for the service; that G. W. Cox had been attempting to procure the loan, but none of them had succeeded in doing so. J. A. Smith testified that he had been in Memphis, trying to negotiate the loan, and it occurred to him that he could procure it from C. A. Mack. That he went to him upon his return from Memphis, told him he desired the loan for the purpose of buying certain lands, which

were worth $10 or more per acre; that he would secure the loan by mortgage upon the lands, and, in addition, upon the farm of one of the appellants, Virginia Thompson, in Greene County. That Mack intimated that he was favorable to the proposition, and, after an hour's absence, returned, when they had another conversation. Mack said he had investigated the matter a little during the time, and one or two people told him it was a good loan, and he said further: "I understand, Joe, that you have offered a bonus of $1,000 to anybody that will loan you this money." "I looked at him a short time, long enough to get his expression, and saw that he knew something about this $1,000, and I told him yes. He said: 'That $1,000 looks good to me, and if I make the loan you will have to give it to me.' I told him all right." That thereafter Mack went to the bank to make the necessary arrangements, returned, and said the money would be forthcoming when the title was approved by Mr. Beauchamp, who was not then in the city. That it was arranged that evening or the next morning that Beauchamp, in Mack's behalf, and Williams, in behalf of his associates, should go to Harrisburg, and investigate the title of the land that was about to be purchased. That they went there. George Cox informed the witness that Beauchamp had telephoned from Harrisburg for him to tell Williams to have the $1,000 placed in the bank and inform him by 'phone that it had been done, or that matters at that end of the line would not be fixed up. This was done. Witness made no arrangement with Mack how the $1,000 should be paid, and at no time had he had any conversation with Beauchamp about this $1,000 or asked him to assist him in procuring the loan. The next day the notes and mortgages were executed and delivered in Mr. Beauchamp's office, the check for the $1,000 having been first turned over to him; that witness had never made any agreement with Beauchamp, nor had any conversation with him relating to any compensation to be paid to him for procuring the loan, and in answer to this question said:

"Q. Did you know who was getting the $1,000 at the time you were making the check to Beauchamp? A. Mr. Mack was the man I was paying this money to, and the reason I gave it to Beauchamp was that Mack told me that Beau-

champ was his attorney, and would attend to the matter for him, and that is why I gave the check to Beauchamp. Otherwise I would have given it to Mr. Mack."

Witness said further that he had never had any conversation with Cox at any time in which he was told that Beauchamp would procure the loan, and that he must be paid for it.

The lands were purchased. and the deed of conveyance made to C. A. Mack, for a consideration of $10.642.50. He later, for the same consideration, made a quitclaim deed to appellants at the time of the execution of the mortgage.

J. W. Williams, another appellant, testified that the lands were purchased from J. H. Vandever for something in excess of $10,600, and the title was taken in the name of C. A. Mack; that he went to Harrisburg to close out the trade with Beauchamp, who gave Vandever his personal check to cover the consideration. It was witness' understanding that they were to pay Mack $1,000 additional, to be embodied as a part of the principal in the mortgage, and he didn't understand, until he returned from Harrisburg, that the transaction had been arranged otherwise. He then joined with the others in executing a note for $1,000, but did not know to whom the money realized thereon had been paid. That he represented the firm when he went with Mr. Beauchamp to look up the titles, and supposed that Mr. Beauchamp represented Mack. Didn't remember that Beauchamp said anything about who he represented. That he didn't represent witness, and that he had never spoken to him about representing him, nor with his associates, nor agreed to pay him anything, nor had he spoken to him about procuring a loan from Mack. This witness admitted that he had offered a bonus to other parties if they would get the money for appellants, but that he had never had any conversation with Mack or Beauchamp in regard thereto, and could not recall any conversation with Mack to the effect that he refused to make the loan after reconveying the lands for the additional $1,000. He understood Mack to refuse to make the loan because it had originally been for five years, but consented to do so if it was to be for one and two years. He denied that Cox had any conversation with him, in which he stated that he thought Beau-

champ could get the loan if he would pay him $1,000 to do so, and also that he had any conversation in his office, or Cox's, in which Cox told him the $1,000 they put up goes to Beauchamp. The only thing said about $1,000 in his presence was that they were paying Clyde Mack $1,000 more than he was paying for the land. That he knew nothing of what became of the $1,000, other than what they told him. He had never employed Cox to represent him. He acknowledged he and his associates were ready to pay any one $1,000 that secured the money for them, and he believed the bonus was to be included in the principal and mortgage.

Wright also denied any conversation with Cox, in which he had been informed that they could procure the loan through Beauchamp by paying him (Cox) $1,000.

Mack testified that he had not employed Beauchamp in this or any other matter as his agent, and he made the deal to loan the money with Beauchamp; that he never got any part of the $1,000 paid to Cox and Beauchamp for procuring the loan, and answered further as follows:

"Q. Did you ever have any understanding, tacit or expressed, in any way that you were to have any part of it? A. Most emphatically not. Q. Have you ever received any part of it from Mr. Cox or me? A. Not a penny."

He said first the appellants wanted the money for five years, and he felt that was too long a time, and afterwards when Beauchamp came to see him about it he agreed to let them have it on two years' time. The check covering the consideration for the land was given by Beauchamp personally, because the exact acreage was not known at the time Beauchamp and Williams departed for Harrisburg, and the title was taken in witness' name to protect him until the mortgage was executed. He denied ever having had any conversation with Smith relative to the making of the loan about the bonus, and said it was first broached to him by G. W. Cox about three weeks before the loan was made. In this conversation, Cox said they would give $2,000 personal security and a bonus of $500 in addition to secure the loan. He rejected this and all other propositions after he learned that this would be usurious, and said J. A. Smith had called on him twenty-five or thirty times before the loan was pro-

cured to see if some arrangement could not be made which was satisfactory. He told him if he could get things on a satisfactory basis he could make the loan, and thought he could get the money, if he could cash his time deposits at the bank. This was all he ever said to appellant about getting the money from the bank. That he agreed with Mr. Beauchamp to make the loan on Saturday night between 7 and 9 o'clock, and it was closed on Monday or Tuesday following. That he saw the bank on Monday and made the arrangement that he could draw the money at that time. That ordinarily he would have given them a few days' notice before drawing such a large amount, but didn't on this, as the deal went on through then.

He didn't see the bank as stated by Wright at the time. He told Beauchamp he would make the loan at the time the deal was closed. He could only recall one instance when an attorney other than Beauchamp did anything for him during four or five years before he was testifying. He had submitted both the propositions of $1,000 and a purchase and resale of the lands at an advanced price of that purchase proposed by appellants to Beauchamp, and upon discovering that it would be usurious had declined to have anything further to do with the loan. About a week before the deal was consummated, he offered to lend the money for one year, to be secured by a mortgage on the lands bought and on Mrs. Thompson's farm. He denied any conversation with J. A. Smith on Saturday before making the loan, and stated the only proposition advanced by Smith or any of the other appellants had been rejected by him. Beauchamp told him the night of the loan that he represented the appellants. Witness never received anything, either directly or indirectly, other than the stipulated interest in the notes. He refused to make the loan on the basis proposed by appellants, because they wanted it for five years, and not until the time was reduced to one and two years would he agree to consider it. He was willing to accept Beauchamp's opinion as to the title to the land as a basis for the loan, and appellants never told him that Beauchamp was representing him, and he wasn't present when the papers were executed and delivered.

During the time of the negotiations, he consulted with

Beauchamp about the legal phase of the transaction, but all conversations related to matters that arose prior to the Saturday night conversation with Beauchamp, in which he dealt with him as the agent of appellants and agreed to make the loan.

Beauchamp testified that he was an attorney, and advised Mack that to make a purchase and resell at an advance of $1,000 would be but a cover for usury, and G. W. Cox told him after that that appellants were not satisfied because the deal had fallen through. He suggested to Cox that if the defendants would give them the $1,000 that it was currently rumored would be paid to any one procuring a loan for them, he and Cox would attempt to procure it. That Cox went to see the defendant's attorney about 7:30 Saturday evening, and informed him that they would pay the money. Witness at once went to see Mack, and, after suggesting various deals, all of which were rejected, finally induced him to agree to let them have the money on one and two years' time. Sunday morning, Cox informed him that appellants had accepted the terms, and witness was to accompany Williams to Harrisburg to examine the records. Before their departure, witness had arranged with Mack that he should give his personal check for the consideration, which Mack promised to order paid. He further arranged with Cox to be assured the money would be paid over in the event the title was accepted. Having satisfied himself as to the title, he took a warranty deed from the vendors to plaintiff, Mack, who in turn afterwards quitclaimed to defendants. That evening he delivered the deed to appellant, Smith, who gave him a check for $1,000, one-half of which he paid to Cox. Further:

"Q. Were you representing the defendants in getting this loan for them? A. I thought I was. I represented them either knowingly or unknowingly, I don't know which. I thought I was representing them, and I know they accepted what I did, and the deal went through just that way, and they paid me the $1,000, and Clyde Mack never had a cent of that money, or any other money of mine, except whatever store account I had down there. I have paid that, just like anybody else does."

Said further that he had never been general attorney for Mack; that there was no understanding then, nor had

there been that he was his attorney; that he transacted some business for Mack, who didn't have much business. On cross examination, he stated that he made all arrangements with Cox, who stated he was representing appellants, which was borne out by the manner in which the arrangements were carried out. He took the title in Mack's name, at the time the land was bought, being fearful that appellants, if they got the title in their name, would refuse to pay the bonus. The only conversation he had with any of the appellants about the matter was on Sunday, and he remarked to Smith: "This is a big transaction, Joe, and I don't like to assume the responsibility of passing on the title." Smith replied that it was all right.

Cox testified that he was at first a partner with appellants, but dropped out about two weeks before the loan was procured. After he learned that Mrs. Thompson's farm would be included as security, he tried to get Mack to lend the money, but he refused when he found the transaction would be usurious. On Saturday night in a conversation with Beauchamp he said defendants were willing to pay the $1,000, and that he (Beauchamp), should try to get the money for them. Accordingly, Beauchamp induced Mack to make the loan on one and two years' time, which terms the appellant accepted after some hesitancy. They understood that the $1,000 was to go to Beauchamp, who afterwards divided it with the witness. Witness did not represent Mack, nor did he give him any part of the $1,000. While Beauchamp was at Harrisburg, he telephoned witness to get up the money, which, as they then agreed, was later done.

On cross examination, he stated he told Smith, on his return from Memphis, that he could get the money from Mack. That he did not tell them he would procure it for them for $1,000. That his suggestion was gratuitous at the time. That he did not know whether any of them talked to Mr. Beauchamp and agreed to pay him any sum of money. That Beauchamp fixed up the papers for Mack. In reply to the question if he had not told one of the attorneys that Beauchamp was Mack's agent, and he represented appellants, he said, "You asked me that question, if me and Beauchamp were these people's agents, and I said you could call it anything

you wanted to. They told me to get this money, if I could. Q. Did you not say this: 'I was these people's agent and Beauchamp was Mack's agent?' Or did I not ask you if you were their agent, and Beauchamp was Mack's agent, and you said, 'Yes sir?' A. That may have been what I said. I don't know what arrangement Mr. Mack or Mr. Beauchamp had."

He gave defendants to understand that the $1,000 for Beauchamp must be paid in cash. He had nothing to do with closing out the transaction.

Another witness testified that Smith was very anxious about the loan and came into the store to see Mack twelve or fifteen times shortly before it was made; sometimes several times a day. Another clerk testified about to the same effect.

The court rendered a decree for the amount due upon the notes, and a foreclosure of the mortgage and a sale of the lands, dismissed the cross complaint, and from the judgment appellants appealed.

*Block & Kirsch*, for appellant.

This case turns upon the question whether Beauchamp was the agent of appellants or of appellee. If he received the $1,000 bonus while the agent of appellee, and the latter had knowledge thereof, or if the circumstances are such that it can be presumed that he had such knowledge, the transaction was usurious. 54 Ark. 40; 51 Ark. 535; 51 Ark. 547.

*M. P. Huddleston*, for appellee.

The burden of proof is upon the person who pleads usury to show clearly that the transaction is usurious. Usury will not be inferred where from the circumstances the opposite conclusion can be reasonably and fairly reached. 74 Ark. 241; 68 Ark. 162; 91 Ark. 458; 54 Ark. 573. To affect a loan with usury on account of a commission paid to an intermediary, it must appear that he was the agent of the lender and took commission under authority, expressed or implied, from his principal. 54 Ark. 573; 57 Ark. 251. See also, 66 Ark. 10; 51 Ark. 535, 544; 83 Ark. 31.

KIRBY, J., (after stating the facts). The sole question in this case is one of fact. The law is well settled that, "to sustain the plea of usury, it must appear that

excessive interest was paid to the lender, or that a bonus or commission was paid to the agent of the lender with his knowledge, or under circumstances from which his knowledge will be presumed, which commission, when added to the interest paid or to be paid to the lender, would exceed the lawful rate." The burden of proof is upon the party who pleads usury to show clearly that the transaction was usurious. *Banks* v. *Flint*, 54 Ark. 40; *Vahlberg* v. *Keaton*, 51 Ark. 535; *Thompson* v. *Ingram*, 51 Ark. 547.

In *Leonhard* v. *Flood*, 68 Ark. 162, the court said:

"Our law visits on a lender, who contracts for usurious interest, however small, a forfeiture of his entire loan and the interest thereon. It follows from the plainest principles of justice that such a defense shall be clearly shown before the forfeiture is declared. Usury will not be inferred from circumstances when the opposite conclusion can be reasonably and fairly reached."

If Beauchamp acted as the agent of the borrowers alone in procuring the loan, it makes no difference whether he received the bonus or not, for what the borrower pays to his own agent for procuring the loan is no part of the sum paid for the loan or for forbearance of money. *Vahlberg* v. *Keaton, supra.*

"To constitute usury, there must be an agreement on the part of the lender to receive and on the part of the borrower to give for the use of money a greater rate of interest than 10 per cent." *Banks* v. *Murphy*, 83 Ark. 36.

As already said, the sole question in this case in one of fact. The lender denied positively any agreement to make the loan upon receipt of $1,000 bonus above the amount of the interest agreed to be paid, and stated that he absolutely refused to make the loan at all when he learned that such a transaction as proposed to him would be usurious. That, later, he was approached by Beauchamp, who insisted upon his making the loan and agreed to do the work of getting up the papers for nothing, if the loan could be arranged. He refused then to make the loan for the time proposed, but later agreed to and did make it for two years. He denied receiving any bonus, and that any one else was acting as his agent in receiving one.

Appellants do not deny that they offered to pay the bonus to any one who could procure the loan, and both Cox and Beauchamp stated positively that they procured the loan and received the bonus, Cox insisting with Beauchamp that appellants were still willing to pay the $1,000, and that the loan should not be permitted to fall through, and that he ought to be able to procure it, and that he would pay him half the bonus if he would assist in procuring the loan or get Mack to make it. These witnesses both testified that they did procure the loan from Mack, that they received the bonus and divided it between themselves, and that Mack had nothing to do with it and did not receive any part of it.

Of course, if appellants were believed, the transaction was usurious, but the evidence is in direct and irreconcilable conflict, and it was passed upon by the chancellor, and we can not say that his finding and decision is against a preponderance of it. Such being the case, the decree is affirmed.