Copeland *v.* State.

4832                                                      289 S. W. 2d 524

Opinion delivered April 9, 1956.

[Rehearing denied May 14, 1956.]

*Nance & Nance* and *Mann & McCulloch,* for appellant.

*Tom Gentry,* Attorney General, and *Thorp Thomas,* Assistant Attorney General, for appellee.

Ed. F. McFaddin, Associate Justice. Appellant was convicted of keeping a gambling house in violation of § 41-2001, Ark. Stats. His motion for new trial contains thirteen assignments which he has grouped and argues under the four topics now to be discussed.

I. *Motion For Directed Verdict.* This necessitates a review of some of the evidence. The Sheriff of St.

Francis County obtained a warrant to search a gambling house known as "The Groves"; and executed the warrant one night about ten o'clock. Appellant, Copeland, opened the door when informed of the warrant. Approximately seventeen persons were engaged in gambling, either at the dice table or the roulette wheel. Gambling equipment, firearms and liquor were seized; and also a book later to be discussed.

A crate was located which had contained the roulette wheel, and on the crate there was a shipping tag which gave Copeland's name and Memphis street address. The money box contained only $70.80; but Copeland had $2,950.00 in his pocket. The "guests" were allowed to leave unmolested; but those operating the gambling devices were taken into custody. As the officers were leaving with Copeland, he instructed the cook to stay there and look after the building until he returned. Two officers testified that Copeland volunteered the information to them that he and one Harold Suitts owned The Groves. In view of all of the foregoing, it was clear that a case was made for the Jury as to Copeland's guilt or innocence under § 41-2001, Ark. Stats.

II. *Motion For Continuance.* Copeland sought a continuance because of the absence of the witness, McMillan; and in the motion for continuance Copeland stated that McMillan worked at The Groves and was there at the time of the raid and would testify: ". . . that the said Joseph H. Copeland did not or does not have the ownership of or a proprietary interest in The Groves nor was he the operator thereof." After the motion for continuance was filed, the Prosecuting Attorney went to see McMillan—ill at his home—and when the Prosecuting Attorney reported to the Court, the following occurred:

"Q. Mr. Henry, did he say categorically on that occasion that he could not testify under oath that Copeland did not own any proprietary interest?

"A. He said he could not and would not testify under oath that Mr. Copeland did not own any interest

in the club, nor could he testify to any other person that did or did not own an interest in the club.

"MR. LONG: I believe that is all."

CROSS-EXAMINATION BY MR. McCULLOCH:

"Q. The purpose of your questioning, Mr. Henry, was directed to whether he was able to state of his own knowledge positively as to the ownership?

"A. I asked him if he knew who owned it.

"MR. McCULLOCH: Well, in view of what Mr. Henry has said, we would be willing to amend that stipulation in line and put it on information and belief, that is so far as he knows of his own knowledge Mr. Copeland is not the owner or operator, but that is as far as we can go.  .  .  .

"THE COURT: Let me see if the Court understands the amendment you are making, Mr. McCulloch; you are willing to make what amendment?

"MR. McCULLOCH: We are willing to amend it to the extent that we are not positive that Mr. McMillan would testify positively as to the ownership of the place; he would testify on his information and belief.

"THE COURT: Now, the Prosecuting Attorney has just testified that he told him that he did not know who owned it and he wouldn't swear whether or not the man did or did not own it.

"MR. McCULLOCH: Well, it is our contention that his testimony would be that from his knowledge of all the circumstances in view of his position as an employee, that it is his information and belief that Mr. Copeland does not own it.

"MR. LONG: I think you can say that.

"THE COURT: All right, you are ready to admit that?

"MR. LONG: That he will testify that.

"THE COURT: If present, he would testify that according to this statement here in the motion, to the best of his knowledge and belief; is that right?

"MR. LONG: I think we would have to do that.

"THE COURT: Then I presume the case is ready for trial.

"MR. McCULLOCH: Of course, we still have our motion for a continuance; we realize what position that puts us in and we object to going to trial at this time, for the record."

In the course of the trial the Court told the Jury:

"Thomas McMillan, a witness called by the defendant in this case is ill and unable to be present as evidenced by a doctor's certificate filed in this case and it has been stipulated and agreed between counsel for the defendant and the Prosecuting Attorney that said witness, Tom McMillan, if present would testify as follows: That he was an employee and worked in the operation of the place known as The Groves, that he was working there on the night when the raid was made by the sheriff and other officers and was present when the raid was made, that he did not have any definite information as to the owner or owners of the property known as The Groves or the personal property contained therein, but according to his information and belief Joseph H. Copeland was not one of the owners.

"MR. McCULLOCH: We object to the giving of the stipulation in the form as given by the Court on the grounds that it was not in the form agreed upon as shown by the prior notes of the reporter. (Exceptions noted.)

"THE COURT: Gentlemen, you are instructed that under the law when the State of Arkansas through its Prosecuting Attorney admits in a criminal case that the witness would testify to certain facts, the law requires them also to admit the truth of the statements which they admit the witness would make if present. Call your next witness."

On appeal Copeland argues: (a) that he was entitled to the continuance as a matter of right; and (b) that the statement that the Court gave the Jury was not as strong a statement of the witness' testimony as Copeland was entitled to have. There is no merit to Copeland's claim for continuance as a matter of right. There was another witness, John L. Adams, who worked at The Groves and who testified that Copeland was not the owner of the place; so McMillan's testimony would have been cumulative on that point. The Court could have denied the motion for continuance because the evidence of the absent witness was cumulative. *Pool* v. *State,* 121 Ark. 17, 180 S. W. 339; and see cases collected in West's Arkansas Digest "Criminal Law," Key No. 596(1).

The second argument made by Copeland—that the statement the Court gave the Jury was not as strong as he was entitled to have—is likewise without merit. In continuances in criminal cases, when the State admits that an absent witness would testify as claimed, then the State must also admit the truthfulness of such statements of the absent witness.[1] See *Graham* v. *State,* 50 Ark. 161, 6 S. W. 721; and see *Tiner* v. *State,* 110 Ark. 251, 161 S. W. 195. As originally drawn, the motion for continuance recited that McMillan would swear that Copeland *was not the owner of The Groves.* To have admitted the truthfulness of that statement would have been tantamount to a dismissal of the case; so, in order to prevent such eventuality, the Prosecuting Attorney inquired of the witness what he *knew,* and found out that the witness did not know and would *not swear* that Copeland did not own The Groves. Thus, all that McMillan could have testified to was that he did not know who owned The Groves. The Court told the Jury, and the State admitted, that McMillan did not have any definite information as to who owned The Groves. That is the full force of McMillan's testimony; that is what the State

---

[1] In civil cases the person resisting the motion for continuance can admit that the absent witness would testify to certain facts without admitting the said facts (see § 27-1403 Ark. Stats.); but in criminal cases the State is required to admit the stated facts to be true (see note following § 43-1706 Ark. Stats.).

admitted and that is what the Court told the Jury; and no error was committed.

III. *Admitting the Book in Evidence.* When the officers seized the gambling equipment, etc., they also seized a book containing what purported to be, *inter alia,* a profit and loss statement on the gambling operations. This book was admitted in evidence just as the gambling equipment, the dice and the other seized articles could have been admitted. It was not attempted to show who made any of the entries in the book; but it was shown that there was one entry in the book showing a payment for: "Wheel Refinished, $252.16." It was not claimed that this was in Copeland's handwriting; but it was merely shown that a certain amount was paid for having the roulette wheel refinished. It had previously been shown that the crate, in which the roulette wheel fitted, had a tag on it showing that the crate was shipped to Copeland at his Memphis, Tennessee, address. When Copeland was on the witness stand, he testified regarding the roulette wheel:

"Q. You say the wheel was shipped to you in Memphis?

"A. Yes, sir, c.o.d.

"Q. Did you own the wheel yourself?

"A. No, sir.

"Q. Who owned it?

"A. We sent it, I sent the wheel to Chicago or Cincinnati, one, I believe it was Cincinnati.

"Q. Whose wheel was it?

"A. It was the place's wheel.

"Q. The place?

"A. Yes.

"Q. Where did they get it?

"A. I don't know; it was there when I went over there.

"Q. So, you took it and sent it over to be refinished and they returned it to you back in Memphis?

"A. I didn't take it; they told me to take it and have the board refinished, just the board.

"Q. And you did that?

"A. Yes.

"Q. And it was shipped back to you in Memphis?

"A. Yes.

"Q. Did you return it from Memphis, yourself?

"A. Yes, sir.

"Q. You set it up?

"A. I didn't set it up; I put it in the house in the rear."

Since the only entry in the book sought to be introduced in evidence related to the payment for the roulette wheel, and since Copeland admitted having the roulette wheel, we can see no harm in the Court's ruling regarding the book.

IV. *Testimony of a Witness Not Under the Rule.* One of the witnesses in this case was a deputy Sheriff named Kinzer. He was called by the State and immediately when he was called the following occurred:

"MR. LONG: Your Honor, in fairness to the Court and to the defendant, also, I want to point out that early in the testimony of Mr. Thomas, I discovered Mr. Kinzer sitting in the courtroom; he had been working down here and he didn't know he was supposed to be under the rule. He is being called for the purpose of corroborating an admission made out here in the jail. Now, if the defendant wants to object to his testimony under those conditions, and the Court wants to sustain it, now will be the time to do it.

"MR. NANCE, SR.: We would like to object to it, Your Honor.

"MR. LONG: His testimony does not touch on anything that Lt. Thomas did.

"THE COURT: How long were you in the courtroom?

"THE WITNESS: Ten minutes, Judge, I would say.

"THE COURT: Is that the only witness you heard testify?

"THE WITNESS: Yes, sir.

"THE COURT: Well, this witness hasn't actually been put under the rule, because he was not here when the rule was invoked and since this last witness—, if his testimony doesn't touch on any matters that Lt. Thomas testified about, I think the objection to him testifying would be overruled. If he starts to testify to anything that Lt. Thomas touched on, however—.

"MR. LONG: That will be avoided, Your Honor.

"MR. NANCE, SR.: Note an exception, Your Honor."

The gist of the whole point is that Mr. Kinzer had not been in the courtroom but ten minutes and all he had heard was the testimony of a State Policeman which related to matters entirely different from those connected with Kinzer's testimony. When Kinzer testified, there was no motion made to exclude his testimony other than the one objection previously recited above. In this jurisdiction, the Trial Court is invested with considerable discretion in the matter of putting witnesses under the rule.[2] Certainly there was no abuse of discretion under the facts and circumstances in this case.

Finding no error, the judgment is affirmed.

Justice MILLWEE concurs.

___

[2] Section 43-2004 Ark. Stats. says that in certain matters in criminal trials, the code of practice in civil cases shall govern. Section 28-702 Ark. Stats. comes to us from the civil code and the cases construing it show the broad discretion allowed the Court in this matter of putting witnesses under the rule.