McCOY FARMS, INC. et al *v.*
J & M McKEE et al

77-201                                    563 S.W. 2d 409

Opinion delivered March 6, 1978
(In Banc)
[Rehearing denied April 17, 1978.]

22

*Freeland & Gafford,* Oxford, Miss.; *Gaughan, Barnes,*

*Roberts, Harrell & Laney,* and *Wright, Lindsey & Jennings,* for appellants.

*Brown, Compton & Prewett, Ltd.,* for appellees.

JOHN A. FOGLEMAN, Justice. This appeal was taken from a decree foreclosing a purchase money mortgage on farm lands which had been conveyed by appellees to appellants. The mortgage secured the payment of a promissory note dated February 1, 1976, executed by appellants for $539,200 with interest at 8½% per annum, payable on February 1, 1977. Appellants defended the mortgage foreclosure action on the ground that the note was usurious. It was the contention of appellants that this note was usurious because it was actually executed on August 30, 1976, but backdated to February 1, 1976. The court rejected this contention. We find no reversible error on trial de novo and affirm.

At the outset, we dispose of one of appellants' points for reversal by sustaining their contention that the chancellor erred in excluding documents and testimony offered by them to show the facts and circumstances relating to the note and mortgage and their execution. Such evidence is admissible on the issue of usury. *American Physicians Insurance Co.* v. *Hruska,* 244 Ark. 1176, 428 S.W. 2d 622; *Textron* v. *Whitener,* 249 Ark. 57, 458 S.W. 2d 367. It was error to exclude this evidence and we consider all such proffered evidence on trial de novo. *Price* v. *Price,* 258 Ark. 363, 527 S.W. 2d 322.

We also find that the chancellor erred in excluding appellants' Arkansas attorney from the courtroom on motion of appellees' attorney when the latter stated that he might find it necessary to call appellants' attorney as a witness. Neither our statutes on sequestration of witnesses nor the Code of Professional Conduct requires this, when an attorney is called as a witness by, and testifies on behalf of, an adverse party.

Rule 615 of the Arkansas Uniform Rules of Evidence was in effect at the time of the trial. It requires that the court order witnesses excluded at the request of a party. Ark. Stat. Ann. § 28-1001 (Supp. 1977). But it does not authorize exclusion of a person shown by a party to be essential to the

presentation of his cause. A party's only lawyer would certainly fall into the category of those who are not to be excluded. This would require the court to determine the question of essentiality of the presence of a potential witness to the presentation of a party's case and that question would arise when a party is represented by more than one attorney. The trial judge in such cases must have some latitude of discretion, which would be narrowed under circumstances prevailing here, i.e., when the witness to be excluded is the party's only Arkansas attorney in a case in a court of this state.

In adopting the Uniform Rules of Evidence, the General Assembly did not specifically repeal Ark. Stat. Ann. § 28-702 (Repl. 1962) governing sequestration of witnesses, although there was a specific repeal of the very next section, § 2, Act 1143 of 1975. The adopting act did contain a general repealer. In our view of this case, however, it is not necessary that we decide whether there is an irreconcilable conflict in the two statutes.

The earlier statute [Ark. Stat. Ann. § 28-702 (Repl. 1962)] only applied to sequestration (or segregation) of witnesses of the party adverse to the party requesting exclusion. Appellants assured the court that they had no intention of calling this attorney as a witness. Still, the request was made by appellees and the chancellor was persuaded to honor it. The application of the rule of sequestration under this statute to any witness was, at the most, discretionary with the court. *St. Louis, I.M. & S. Ry. Co. v. Pate,* 90 Ark. 135, 118 S.W. 260 (1909); *Southern Anthracite Coal Co. v. Bowen,* 93 Ark. 140, 124 S.W. 1048. See also, *Copeland v. State,* 226 Ark. 198, 289 S.W. 2d 524; *Benson v. State,* 149 Ark. 633, 233 S.W. 758. The trial court had discretion in determining which witnesses may be put under the rule and which ones, if any, may be excused from the rule. *Arkansas Motor Coaches v. Williams,* 196 Ark. 48, 116 S.W. 2d 585; *Home Mutual Fire Ins. Co. v. Riley,* 252 Ark. 750, 480 S.W. 2d 957.

The rule against the attorney who becomes a witness continuing as an advocate was not designed to permit a lawyer to call opposing counsel as a witness and thereby disqualify him. See Code of Professional Responsibility, DR 5-102 (B). *Galarowicz v. Ward,* 119 Utah 611, 230 P. 2d 576

(1951); *Phillips* v. *Liberty Mutual Ins. Co.*, 43 Del. Ch. 436, 235 A. 2d 835 (1967); *Beavers* v. *Conner*, 258 So. 2d 330 (Fla. App., 1972). The language of *Jones* v. *Hardesty*, 261 Ark. 716, 551 S.W. 2d 543, relied upon by appellees to justify the action taken, does not support their position. It is true that the attorney there testifying had been called to the witness stand by adverse counsel, but the cause for this court's concern was the fact that the testifying attorney thereafter cast himself in the role of witness for his own client.

We have held that it was within the trial court's discretion to permit an attorney for a party to testify in a case, even though the rule has been invoked. *Arkansas Motor Coaches* v. *Williams*, supra; *Oakes* v. *State*, 135 Ark. 221, 205 S.W. 305. But we have not hesitated to reverse a judgment for abuse of that discretion. *Rushton* v. *First National Bank of Magnolia*, 244 Ark. 503, 426 S.W. 2d 378. A judgment will not be reversed, however, because of the court's action with reference to exclusion of witnesses, in the absence of an abuse of discretion. *Mikel* v. *State*, 182 Ark. 924, 33 S.W. 2d 397.

We are admonished by statute that no judgment shall be reversed or affected by any error or defect in the proceedings which does not affect the rights of the adverse party. Ark. Stat. Ann. § 27-1160 (Supp. 1977). In any event, we should not reverse the action of the trial court in the exercise of discretion in a matter of practice and procedure, when there has been no prejudice to the complaining party in the ultimate result. *Naler* v. *Ballew*, 81 Ark. 328, 99 S.W. 72; *Kansas City Southern Ry. Co.* v. *Murphy*, 74 Ark. 256, 85 S.W. 428; *St. Louis, I.M. & S. Ry. Co.* v. *Boback*, 71 Ark. 427, 75 S.W. 473; *St. Louis I.M. & S. Ry. Co.* v. *Devaney*, 98 Ark. 83, 135 S.W. 802; *Railway Co.* v. *Sweet*, 57 Ark. 287, 21 S.W. 587. See also, *State* v. *Jennings*, 10 Ark. 428; *Globe Life Ins. Co.* v. *Humphries*, 258 Ark. 118, 522 S.W. 2d 669; *Bates* v. *Simmons*, 259 Ark. 657, 536 S.W. 2d 292; *Parker* v. *Wells*, 84 Ark. 172, 105 S.W. 75; *Kelly* v. *DeWees*, 200 Ark. 770, 140 S.W. 2d 1011. Error unaccompanied by prejudice, commonly called harmless error, is not ground for reversal. *Keathley* v. *Yates*, 232 Ark. 473, 338 S.W. 2d 335; *Christmas* v. *Raley*, 260 Ark. 150, 539 S.W. 2d 405; *Railway Co.* v. *Sweet*, supra. The harmless error rule applies even when the error is of constitutional proportions. *Chapman* v. *California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, 24

ALR 3d 1065 (1967), reh. den. 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241; *Gilbert v. California,* 388 U.S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178 (1967).

We do not see how appellants have been prejudiced by the exclusion of its only Arkansas attorney from the proceedings. The facts seem to be undisputed. The legal question seems to have been adequately presented. It has been presented here on trial de novo and the law firm of the excluded attorney has apparently participated in appellants' brief, as its name appears thereon. Yet no attempt was made to have a review or rehearing in the trial court with the participation of Arkansas counsel or to offer evidence that had not been offered at the trial or to present any legal argument that might have, but had not, been made. We find no prejudice to appellants by the exclusion of their Arkansas attorney on the possibility that he might be called as a witness by appellees.

Although we might say that there was an abuse of the trial court's discretion in denying appellants' motion for a continuance to obtain other Arkansas counsel, if there had been any showing that prejudice resulted, in the absence of any such showing, there is no ground for reversal. *Mammoth Spring School District No. 2* v. *Fairview School District No. 7,* 190 Ark. 769, 80 S.W. 2d 615; *Missouri Pac. R. Co.* v. *Berry,* 191 Ark. 1165, 83 S.W. 2d 531; *Missouri & N.A.R. Co.* v. *Robinson,* 188 Ark. 334, 65 S.W. 2d 546; *Barrett* v. *Berryman,* 127 Ark. 609, 193 S.W. 95. Even when there is a clear abuse of discretion in the denial of a motion for continuance, the error is not reversible unless there is a showing of prejudice. *Finch* v. *State,* 262 Ark. 313, 556 S.W. 2d 434 (1977). Even though a motion for new trial is not required, as a prerequisite to appellate review, it is still a procedure available for showing prejudice in a ruling of the trial court when it was not possible to make that showing at the time of the ruling. *Finch* v. *State,* supra. Even though it is doubtful that, strictly speaking, a motion for new trial is appropriate in a chancery case, a bill of review or petition for rehearing can serve the same purpose in chancery. *Midwest Lime Co.* v. *Independence County Chancery Court,* 261 Ark. 695, 551 S.W. 2d 537. If there had been any prejudice to appellants in exclusion of their Arkansas at-

torney from the proceedings, it might have been shown, or at least alleged, in a bill of review or petition for rehearing.

Where the decision and judgment is correct on the undisputed evidence, the appellant is in no position to complain. *Tutterman v. Grier,* 112 Ark. 366, 166 S.W. 749. Since, as we view the matter, the procedural error, granted that there was an abuse of discretion in the matter, did not and could not have affected the correct result reached by the trial court, there is no prejudice, and consequently, no reversible error.

The real issue in this case is whether the note sued on was usurious. The transaction commenced with the execution of a contract for the sale of certain farmland by appellees to appellants David B. Boone and Oval McCoy, Jr. The purchase price was $889,200, of which $60,000 was payable in cash at the time of closing (of which a $50,000 promissory note, due and paid on January 7, 1976, was a part) the assumption of an indebtedness of $290,000 to Connecticut General Insurance Company and a balance of $539,200 to be evidenced by a promissory note due February 1, 1977. The contract, dated November 13, 1975, provided for closing of the sale on February 1, 1976. Although the contract provided that possession of the property be given on delivery of a deed, the contract contained a clause permitting the purchasers to occupy the land after execution of the contract for the purpose of farming, ditching, leveeing, discing and making improvements on the land at their own expense, and without any right to recover any expenditures made for the purposes from the sellers.

A promissory note bearing interest anterior to its date which does not provide on its face for an interest rate in excess of the maximum permissible rate, is presumed to have been given upon a state of facts which authorized the taking of the instrument and to be lawful and valid. *Ewing v. Howard,* 74 U.S. 499, 19 L. Ed. 293 (1869); *Gettinger v. Lattingtown Harbor Development Co., Inc.,* 17 AD 2d 629, 230 NYS 2d 765 (1962); *Williams v. Bronston,* 190 Cal. App. 2d 812, 12 Cal. Rptr. 463 (1961); *Franklin National Bank v. Feldman,* 42 Misc. 2d 839, 249 NYS 2d 181 (1964). See also, *Ansley v. Bank of Piedmont,* 113 Ala. 467, 21 So. 59 (1896). An antedated note is

not usurious, as a matter of law, when the amount of interest paid would exceed the permissible rate applied to the principal for the period between the date it was delivered and the due date, unless it was antedated merely to avoid the law of usury. *Ansley v. Bank of Piedmont,* supra.

It has been held that a note bearing interest from the proper date for closing a sale and purchase of real estate would not be usurious when it was given and dated on a postponed date of closing, when the postponement was solely at the request and for the convenience of the purchaser. *Gettinger v. Lattingtown Harbor Development Co.,* supra. It was recognized that, in case of specific performance, the seller might well have been entitled to interest from the original closing date. A note given for a debt due before its execution is not usurious when interest at a legal rate runs from the due date, even though the notes evidencing the debt are not signed until a later date. *Burleson v. Morse,* 172 S.W. 2d 361 (Tex. Civ. App., 1943).

Since the note must be presumed to have been valid on its face, the burden fell upon appellants to show by clear and convincing evidence that it was void for usury. *Peoples Loan & Investment Co. v. Booth,* 245 Ark. 146, 431 S.W. 2d 472; *Brown v. Central Arkansas Production Credit Ass'n.,* 256 Ark. 804, 510 S.W. 2d 571; *Commercial Credit Plan v. Chandler,* 218 Ark. 966, 239 S.W. 2d 1009; *Smith v. Mack,* 105 Ark. 653, 151 S.W. 431. Usury will not be presumed, imputed to the parties or inferred, if the opposite result can be fairly and reasonably reached. *Hayes v. First National Bank of Memphis,* 256 Ark. 328, 507 S.W. 2d 701; *Davidson v. Commercial Credit Equipment Corp.,* 255 Ark. 127, 499 S.W. 2d 68; *Briggs v. Steel,* 91 Ark. 458, 121 S.W. 754. In determining whether the note was usurious, the matter must be viewed as of the time it was made in the light of all attendant circumstances germane to the transaction. *Hayes v. First National Bank of Memphis,* supra; *Brown v. Central Arkansas Production Credit Ass'n.,* supra; *Key v. Worthen Bank & Trust Co. N.A.,* 260 Ark. 725, 543 S.W. 2d 496.

When we consider the note in question in light of the circumstances under which it was executed, and the evidence in the light most favorable to appellants, appellants' burden was insurmountable and only one result can be reached, i.e., the

one reached in the trial court. Shortly after the contract was signed, appellants availed themselves of the right under the contract with appellees to go upon the property, at their own risk, to make improvements. They spent approximately $135,000 in building 8 ½ miles of levees and discing the land. Appellants McCoy and Boone refused to close on February 1, 1976, the closing date provided for in the contract, because appellees refused to convey to appellant McCoy Farms, Inc., assignee of McCoy and Boone, but not a party to the contract, unless McCoy and Boone joined in the execution of the deferred purchase money notes so that they would be personally liable. The appellees had agreed to sell to the purchasers (McCoy and Boone) or to anyone they might name, but the terms of the contract specified that a part of the purchase price be in the form of a promissory note executed by the purchasers for $539,200, due February 1, 1977, with interest at 8 ½% per annum. McCoy Farms, Inc. filed suit against appellees for specific performance. Appellees counterclaimed, seeking judgment for $50,000 as liquidated damages for breach of contract.

Trial commenced on July 26, 1976, but at the noon recess, the parties entered into a stipulation settling the controversy. It was dictated into the record by appellees' attorney. In pertinent part, it was:

> The plaintiff, McCoy Farms, Inc., agrees that effective August 30, 1976, they will cause J. M. McKee and Margaret McKee *to be made whole under the terms of the provisions of the contract dated on or about November 13, 1975. That on August 30, 1976, the contract will be closed in the same manner and with the same terms and provisions as it would have been closed had no controversy arisen in the previous closing date.* In order to make John McKee and Margaret McKee whole to payments acquired, *plus proportionate interest on $10,000.00 at eight and a half percent interest,* the net result will be that on August 30, 1976, the new closing date, the parties will then stand in the same position as they would have on November 13, 1975. The Note will be signed and endorsed personally by David B. Boone and Oval McCoy, Jr., and McCoy Farms, Inc., and the Mortgage executed properly under the contract will be applied ****

Let the record further show that the parties agree that the *present action shall not at this time be dismissed but shall be held in abeyance with the Court retaining jurisdiction with proper Orders, Judgment and Decrees as they may be approved under the pleadings thus far and this Stipulation, and, after the matter has been closed on August 30, 1976, the initial complaint, counterclaim and all matters will be dismissed with prejudice and each party will bear their own costs.*

*"In other words exactly in accordance with the terms of the contract, Your Honor. Everything like it was back to that."* [Emphasis ours.]

In appellees' counterclaim, they had sought to recover $50,000 in damages from appellants Boone and McCoy. Thus, Boone and McCoy stood to lose $50,000 plus the cost of the improvements made by them at their own risk, if they lost the suit they brought. The settlement made was, in effect, a specific performance of the contract as written, which may have seemed to appellants preferable to the risk inherent in the trial and ultimate resolution of the issues in the case.

If appellees had sought and been granted specific performance, they would have had a firm basis for asking that they recover interest from the original closing date. Specific performance is an equitable remedy which compels the performance of a contract on the precise terms agreed upon or such a substantial performance as will do justice between the parties under the circumstances. It is a means of compelling a contracting party to do precisely what he should have done without being coerced by a court. 81 CJS 701, Specific Performance, § 2; 71 Am. Jur. 2d 10, Specific Performance, § 1; Restatement of the Law, Contracts § 358, Comment a, § 359 (2), § 360 (b), § 326 (c). The object in such cases is to place the party without fault in as nearly the same position as he would have been had there been no default by the other party. *Pillsbury* v. *J. B. Streeter, Jr. Co.*, 15 N.D. 174, 107 N.W. 40 (1906). The guiding principle in such cases is to relate the contract back to the date set therein. *Ellis* v. *Mihelis*, 60 Cal. 2d 206, 32 Cal. Rptr. 415, 384 P. 2d 7 (1963); *Meyer* v. *Benko*, 55 Cal. App. 3d 937, 127 Cal. Rptr. 846 (1976). Although, strictly speaking, legal damages are not awarded when

specific performance is decreed, a decree should, as nearly as possible, require performance in accordance with the terms of the contract, one of which is the date fixed by it for completion; and, when that date is past, the court, in order to relate the performance back to it, gives the complainant credit for any losses occasioned by the delay. *Ellis* v. *Mihelis,* supra.

The contract in this case called for closing on February 1. It provided for interest on the deferred purchase price from the date of closing. As a general rule, in a specific performance case where the purchaser of land is in default, he is to be charged with interest from the time the purchase price should have been paid under the contract. *Kirkland* v. *O'Kelly,* 218 Ala. 68, 117 So. 420 (1928). The allowance of interest during a period of default is a proper and equitable adjustment in arriving at justice between the parties to a specific performance suit. *Pillsbury* v. *J. B. Streeter, Jr. Co.,* supra. See also, *Ellis* v. *Mihelis,* supra; *Meyer* v. *Benko,* supra; *Loveless* v. *Diehl,* 236 Ark. 129, 364 S.W. 2d 317.

It is the policy of the law to encourage settlement of litigation and to uphold and enforce contracts of settlement if they are fairly arrived at and not in contravention of law or public policy. *St. Paul Fire & Marine Insurance Co.* v. *Wood,* 242 Ark. 879, 416 S.W. 2d 322; *Burke* v. *Downing Co.,* 198 Ark. 405, 129 S.W. 2d 946; *Jacobs* v. *American Bank & Trust Co.,* 175 Ark. 507, 299 S.W. 749. There is no contention that the stipulation for settlement was not arrived at in good faith or that there was no consideration for the settlement. Certainly the stipulation could not be said to be illegal for usury, if the equity court could have awarded the interest of which appellants complain. The only question before us is the interpretation of the contract. In view of the italicized parts of the stipulation, we interpret it to call for the execution of the note, exactly as it would have been executed if the transaction had been closed on February 1, 1976. The parties had a right to make any settlement satisfactory to themselves. *Burke* v. *Downing Co.,* supra.

Appellants seem to imply that they executed the note under some sort of duress because appellees demanded that it be dated as it was. Although we feel that appellees properly made such a demand, it is difficult to see how appellants can

claim that they were coerced when the lawsuit that was settled was still pending and was not to be dismissed until the stipulation for settlement had been carried into effect. Certainly they could have resorted to the trial court to enforce the stipulation for settlement and resolve disputes about its terms. *Jannarone* v. *W. T. Co.*, 65 N.J. Super. 472, 168 A. 2d 72 (1961); *Goltl* v. *Cummings*, 152 Colo. 57, 380 P. 2d 556 (1963); *Bankers Fidelity Life Ins. Co.* v. *O'Barr*, 108 Ga. App. 220, 132 S.W. 2d 546 (1963); *Autera* v. *Robinson*, 419 F. 2d 1197 (D.C. Ct. App., 1969); *All States Investors, Inc.* v. *Bankers Bond Co.*, 343 F. 2d 618 (6 Cir., 1965), cert. den. 382 U.S. 830, 86 S. Ct. 69, 15 L. Ed. 2d 74.

Appellants complain that they were wrongfully evicted from the property after they went into possession to make improvements and after the dispute had arisen, and, this being so, they could not be required to pay interest until possession was restored after the closing which took place on August 30. A complete answer to this question is that both parties claimed that the other had breached the contract and this dispute was resolved by the settlement.

The judgment is affirmed.

Chief Justice HARRIS and Justices HICKMAN and HOWARD dissent.

CARLETON HARRIS, Chief Justice, dissenting. My dissent is based on the fact that the trial court excluded appellants' Arkansas attorney from the courtroom on motion of appellees' attorney, and, further, excluded relevant evidence. These two matters will be discussed together. Indeed, the majority itself finds both rulings to be erroneous.

There is no point in my setting out why the former ruling was an abuse of discretion since the majority concede that this action by the court constituted error; however, the majority go on to say that the error was not prejudicial, and I suppose this is based on the fact that out of state counsel, T. H. Freeland, III, of Oxford, Mississippi, proceeded with the case. I do not see how this finding of no prejudice is so clear. Case after case holds that where this court finds error, unless

such error is *clearly* not prejudicial, we reverse; or to state it another way, where error is shown, it is presumed that such is prejudicial unless it *affirmatively* appears otherwise. *Ark. State Highway Commission* v. *Spence,* 254 Ark. 423, 494 S.W. 2d 469. There are dozens of cases to the same effect. Of course, the word "affirmatively" means that the burden is on the party, who benefited from the error, to establish clearly that there was no prejudice. I cannot agree that this has been done.

In the first place, there is no way of knowing how the Arkansas attorney would have handled matters had he been participating. For instance, he might have been able to persuade the court that the evidence heretofore mentioned, consisting of documents and testimony offered by appellants to show facts and circumstances relating to the note and mortgage and their execution, was pertinent and relevant[1] — a fact which the majority concede. This testimony was excluded by the trial court, but the majority say, in effect, that that really makes no difference since "we consider all such proffered evidence on trial *de novo.*" While this has been done in the majority of cases, I think it is also true that in most of these cases the trial court heard the proffer and simply held such evidence inadmissible. In the instant case, according to the record, the chancellor left the courtroom and returned to chambers,[2] appellants making their proffer in his absence, and he did not return to the courtroom until the proffer of evidence had been concluded. Accordingly, he did not know what specific evidence was being tendered. I certainly cannot say that his decision would have been exactly the same had this evidence been accepted — perhaps so — perhaps not, but at any rate, the trial court should have, in my view, the opportunity to hear, and consider, the evidence which the majority admit was entirely admissible.

This lawsuit involved quite a bit of money and appellants had employed an Arkansas attorney to assist in

---

[1]Another of the justices has pointed out in a dissent a couple of instances where the Mississippi attorney needed advice on procedural points.

[2]The court had excluded the evidence on the basis that any occurrences prior to the compromise settlement were irrelevant and not material to the cause of action.

their representation;[3] yet, this attorney, for no valid legal reason, was prohibited from rendering the service for which he had been employed. The Mississippi counsel then immediately moved for a continuance in order that he might employ some other member of the Arkansas Bar, but this was refused. Since I consider the exclusion of Mr. Gaughan to have constituted prejudicial error, certainly I also consider it prejudicial error to refuse to grant the continuance. There was no reason in advance for out of state counsel to feel that Mr. Gaughan would not be able to participate, since the latter attorney would not be called for appellants, and Freeland was thus left helpless other than to proceed to trial himself. I know that I would personally dislike going to a sister state, where rules of procedure and evidence may well differ from that in Arkansas, to try a case without the help of an attorney of that locality.

Let us remember that a trial should not only be fair (and I do not question the fair-mindedness of the chancellor whom I consider to be a conscientious jurist), but the trial should also have every appearance of fairness, and I can certainly see where appellants could feel that they were mistreated when the Arkansas attorney that had been employed was prohibited from engaging in the trial, and they were further denied the opportunity to obtain other counsel licensed in this state.

It is my view that this court, having found that the exclusion of the testimony herein mentioned was error, and having found that the Arkansas attorney was improperly excluded, should remand this case for further proceedings.

HICKMAN, J., joins in this dissent.

GEORGE HOWARD, JR., Justice, dissenting. The majority concedes that the chancellor erred in excluding appellants' Arkansas attorney from the courtroom on motion of appellees' attorney under the pretext that appellees' attorney might find it necessary to call appellants' Arkansas attorney

---

[3]Some trial courts even require that a non-resident attorney associate a lawyer residing and admitted to practice in the State of Arkansas with him in the litigation.

as a witness.[1] Thus, leaving appellants without the aid and assistance of their Arkansas attorney who was well versed in Arkansas law and trial procedure. Appellants had only their Mississippi attorney who stated that his familiarity with Arkansas law and trial procedure, at best, was limited.[2] However, the majority goes on to affirm the ruling of the trial court by finding that appellants have not been prejudiced by the exclusion of its only Arkansas attorney from the proceedings, the position taken by the majority is untenable for two major reasons and consequently, I must dissent from the holding of the majority.

First, the right of a litigant to counsel of his choice is so fundamental and basic under American Jurisprudence that prejudice is presumed to have resulted without the Court having to indulge in nice and dainty calculations as to the amount of prejudice arising from its denial.[3]

In *Powell* v. *Alabama*, 287 U.S. 45 (1932), the United States Supreme Court, in emphasizing the right of a party to be heard by a counsel of his choice and that that choice may not be diminished by nefarious platitudes, made the following observation:

"If in any case, civil or criminal, a state or federal

---

[1]Rule 615 of the Uniform Rules of Evidence, which became effective July 1, 1976, and, consequently, in force during the trial of this case, provides: At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party that is not a natural person designated as its representative by its attorney, or (3) *a person whose presence is shown by a party to be essential to the presentation of his cause.* (Emphasis added)

During oral argument, counsel stated that this rule was not called to the attention of the trial court, consequently, it seems that both counsel and the court were unaware of the existence of this rule.

[2]On one occasion, the Mississippi attorney solicited advice from the trial court on a point of procedure; and on another occasion, counsel for appellees volunteered advice to the Mississippi counsel on a point of procedure during the course of the trial.

[3]*See: People* v. *Bryant* (1969) 79 Cal. Rptr. 549, 275 C.A. 2d 215, [although a criminal case] the court held that the deprivation of effective counsel is of sufficient constitutional significance to merit reversal even without actual prejudice.

court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that *such a refusal would be a denial of a hearing,* and, therefore, of due process in the constitutional sense." (Emphasis added)

The majority has further found that even though appellants' Arkansas attorney was excluded from the proceedings, "[t]he legal question seems to have been adequately presented." But under the instructions of *Powell* v. *Alabama,* supra, appellants were not even afforded a legitimate hearing. In other words, the proceedings below were a mere formality.

In *Reynolds* v. *Cochran,* 365 U.S. 525, which involved a habeas corpus proceeding, the trial court proceeded with the hearing in the absence of petitioner's retained counsel; petitioner advised the court that his counsel was on the way and was due to arrive on the date of the trial, and asked that the trial be postponed until his counsel arrived; the court denied a continuance and concluded, as the majority has concluded in this action, that if it was error to proceed without petitioner's counsel, it was harmless error in that the only fact at issue in the proceeding had been admitted by the petitioner. The Supreme Court in reversing the trial court concluded that a party has a constitutional right to be heard by counsel of his choice and a failure to hear a party by counsel, employed by and appearing for him, in any civil or criminal case, denies a party a hearing and therefore denies him due process of law in the constitutional sense.

In *Prudential Ins. Co. of America* v. *Small Claims Court of City and County of San Francisco, et al,* 77 Cal. App. 2d 379, 173 P. 2d 38 (1946), the court made the following statement:

". . . There can be little doubt but that in both civil and criminal cases *the right to a hearing includes the right to appear by counsel,* and that the arbitrary refusal of such right constitutes a deprivation of due process." (Emphasis added)

Secondly, the majority takes the position that inasmuch as the proceedings in this case are reviewed *de novo,* there has

been an independent review and consideration of all of the evidence in the record, consequently, there is no merit to appellant's contention that he has been prejudiced one way or the other in the trial court. Thus, the majority found that the transaction is not usurious and therefore, the trial court should be affirmed. But it must be remembered that during oral argument, and indeed this is to be gleaned from the record, counsel for appellants stated that because of the trial court's ruling in excluding certain evidence, but proffered by the counsel for appellants, all of the evidence available to appellants to support its defense of usury was not introduced. Hence, the majority in order to defend the posture which it has assumed in this case has had to speculate on the weight, materiality and authenticity of the evidence that is not in the record. Indeed, the majority has exceeded the scope and latitude of appellate review.

Finally, the following from 16 Am. Jur. 2d P. 973, Section 569, sums up succinctly the thread intended to be woven in this dissent:

"... no one may be legally divested of his property unless he is *allowed a hearing* before an impartial tribunal, where he may contest the claim set up against him, and be allowed to meet it on the law and facts and *show if he can that it is unfounded. He must be given his day in court.*" (Emphasis added)