### STORTHZ v. WILLIAMS.

### Opinion delivered June 8, 1908.

CANCELLATION OF INSTRUMENT—FRAUD.—Where a sale of land estimated to be worth from $900 to $2,500 was procured from an ignorant person for a consideration of $300, through representations as to its value known to the vendee to be false, the sale was fraudulent and will be cancelled upon the vendor repaying the purchase money less the rents received by the vendee.

Appeal from Pulaski Chancery Court; *Jesse C. Hart,* Chancellor; affirmed.

*Eben W. Kimball,* for appellant.

1. Inadequacy of consideration, when amounting only to hardship, furnishes no ground of equitable relief; and when there is no fraud, courts will not relieve from the consequences of contracts voluntarily and understandingly entered into. 24 Pa. St. 360; 21 Gratt. (Va.), 75; 104 Mass. 420; 35 Tex. 225; 17 Mo. 237; 41 N. Y. 329; 5 Pet. (U. S.) 263; 17 Va. 9; 69 Ill. 394; 21 Ala. 371; 4 Ind. 66. Where no fraud is shown (the burden is on the pleader to prove it), mere inadequacy of price is not sufficient to rescind a contract. 1 Wharton on Contracts, § § 165-6; 1 Perry on Trusts, 186; 71 Ark. 599. When the means of information are at hand and equally open to both parties, and no concealment is made or attempted, a misrepresentation by one party to a contract furnishes no ground for equitable interference. 83 Ark. 403; 1 Wharton on Contracts, § 256. It is now too late to interfere. 55 Ark. 148, 155.

2. No demand was made before suit to return the property, nor was tender made of the amount paid or a deed to be executed. 15 Ark. 286, 291; 17 *Id.* 240, 603; 62 *Id.* 274; 59 *Id.* 259; 54 Cal. 161; 1 Wharton on Contracts, § 285 and 919 (2). The fact that the bargain was hard and unreasonable is not enough to induce a court of equity to interfere. 16 A. & E. Enc. p. 699, and note p. 698. The other party must be made whole. 24 *Id.* p. 621.

*Lee Miles* and *J. D. Wade,* for appellee.

1. The sale should be rescinded because of the wilfully false representations of the agent of Storthz, the inadequate consideration and the *undue influence* and *fraud* by one holding a *fiduciary* relation to appellee. 69 Ill. 394; 57 N. H. 374; 64 Tex. 679; 49 Mich. 290; 29 S. W. 242; 35 *Id.* 186; 111 Mo. 1; 11 Ark. 66; 15 *Id.* 599; 17 *Id.* 498; 22 *Id.* 102; 47 *Id.* 339; 74 *Id.* 239; Bispham, Eq. (6 Ed.), art. 206, 219.

2. The most flagrant element of fraud is the violation of the fiduciary relation existing between the guardian, West, and appellee. 40 Ark. 30; 5 Blackf. (Ind.) 509; Bisph. Eq. (6 Ed.), art. 232.

3. A tender was made. 74 Ark. 68; 74 *Id.* 70.

BATTLE, J. Rosa Williams acquired one-half of lot one in block seventy in the city of Little Rock, through the will of her aunt, Tobitha Smith, of whom Evelyn West had been administratrix or executrix. Rosa Williams was a non-resident of Little Rock, and Storthz knew not her whereabouts. He desired to purchase the lot, and employed D. F. Rose for that purpose. Rose employed Evelyn West to find and induce her to sell to him. He did so because she said she could control Rosa. In 1903 Rosa visited Little Rock, and saw Evelyn, who sent her (Rosa) to D. F. Rose, saying he was a real estate agent and wanted to buy her lot, and was a gentleman, and would do what was right. She told him that Evelyn West had sent her to him. He asked what interest she had in the lot, and she said one-half, and he then asked what she wanted for it, and she replied $1,000, and he "laughed at it," and told her it would be sold for taxes, and she might be forced to put down a sidewalk, and the lot would be sold to pay expenses. She wanted to go to see her

agent, Harp, to ascertain the value of the lot, and Rose persuaded her not to go. He told her the whole lot was not worth $500. He testified in this case that at that time it was worth $5,000; that the improvements were worth $1,500, and the lot without them was worth $4,000. He induced her to accept $300 for her half of the lot, saying he had offered that much because Evelyn had sent her to him. She furnished him with an abstract of title to the lot, and an attorney examined it, and Storthz said it was all right. Storthz paid her $293, reserving seven dollars to pay for the abstract, and she executed a deed to him on the seventh day of July, 1903.. Rose testified that Storthz soon after this refused to take $2,500 for one-half of the lot, and said that he had purchased "too cheap." He admitted that he had given $1,030 for the other half of it.

At the time of this purchase Rosa Williams was about twenty years of age, was ignorant and inexperienced, and up to within three or four days of this time had not been in Little Rock for at least five years, and probably eight years. The value of the lot at this time was variously estimated by witnesses at from $1,800 to $5,000, the average estimate being about $3,000, which according to the evidence seems to be a reasonable estimate.

On the 10th day of December, 1903, Rosa Williams brought suit against Levi Storthz in the Pulaski Chancery Court to set aside the deed executed by her to the defendant, for the possession of the lot and for rents thereof while in his possession, and offered to return to him the money she received from the lot. The defendant answered and denied that he was guilty of any fraud in the purchase of the lot, and that she had tendered to him the purchase price he had paid her, and alleged that she had spent the same.

After hearing the evidence, the court found as follows: "that on the 7th day of July, 1903, the plaintiff, Rosa Williams, in consideration of the sum of $300 to her paid by the defendant, Levi Storthz, executed to the defendant a warranty deed to an undivided half of lot one, block seventy, in the city of Little Rock; that possession of the land was delivered by the plaintiff to the defendant, and he is now in occupancy thereof, and has made improvements thereon, necessary to the use of the tenements

thereon; that the plaintiff was a young negro girl, now 22 years of age, a stranger in the town and inexperienced as to the values of real estate; that false and fraudulent representations were made to her by parties who knew them to be false, which induced her to make the sale of the premises; that the sum of $300 was an inadequate price for the premises, or the interest which plaintiff possessed, and that the interest of the plaintiff was an undivided one-half of the lot; and that, after balancing accounts, one-half of the expenditures for improvement of the property paid by the defendant Storthz, with interest calculated, together with the purchase price paid to the plaintiff by the defendant, two hundred and ninety-three dollars, is sixty dollars and eighteen cents more than one-half of the rents of the property with interest." And the court adjudged and decreed that the deed executed by the plaintiff to the defendant be set aside and cancelled, and the interest in one-half of the lot be divested out of the defendant and invested in plaintiff, and that plaintiff have judgment for costs, and defendant have lien on the lot for the $60.18 to be paid by plaintiff in the registry of the court within ninety days, which she did. Defendant appealed.

Appellant concedes that the only question to be decided by this court is, "was the sale by appellee to the appellant void because of fraud alleged to have been practiced upon the appellee at the time of the sale?"

Appellee had no right to rely on the representations of the agent of appellant as to the probability of the property being sold. That was not a matter peculiarly within his knowledge, and was a matter of conjecture. ·But the evidence shows a plan to acquire the interest of appellee in the lot at much less than its value. She was a non-resident of Little Rock, and had been for many years, was young, inexperienced as to value of real estate, and densely ignorant. Evelyn West, an old acquaintance, was employed to find and send her to Rose, the agent of the appellant, and in performance of her undertaking she found Rosa and informed her that Rose was a real estate agent, a man informed as to the value of town lots, that he wanted to purchase her lot, was a gentleman, and would deal fairly, honestly and justly—would do what was right, and, thus prepared to be deceived and defrauded, sent her to him, and he proceeded to com-

plete the scheme by representing that the lot was not worth exceeding $500, which he swore was worth $5,000, and to prove his intention to do right, as Mrs. West said he would, offered $300 for her half, $50 more than its value, because Mrs. West had sent her to him; persuaded her not to see her agent; pressed his offer to an acceptance without the opportunity of an inquiry, and closed the bargain by an earnest paid to bind the contract, and then allowed her to go where she would.

It is true that "the rule is well settled that where the parties were both in a situation to form an independent judgment concerning the transaction, and acted knowingly and intentionally, mere inadequacy in the price or in the subject-matter, unaccompanied by other inequitable incidents, is never of itself a sufficient ground for cancelling an executed or executory contract. If the parties, being in the situation and having the ability to do so, have exercised their own independent judgment as to the value of the subject-matter, courts of equity should not and will not interfere with such valuation." 2 Pom. Eq. Jur. (3d. Ed.) § 926. But Mr. Pomeroy says: "Where the inadequacy does not thus stand alone, but is accompanied by other inequitable incidents, the relief is much more readily granted. But even here the courts have established clearly marked limitations upon the exercise of their remedial functions, which should be carefully observed: The fact that a conveyance or other transaction was made without professional advice or consultation with friends, and was improvident, even coupled with an inadequacy of price, is not itself a sufficient ground for relief, provided the parties were both able to judge and act independently, and did act upon equal terms, and fully understood the nature of the transaction, and there was no undue influence or circumstance of oppression. When the accompanying incidents are inequitable, and show bad faith, such as concealments, misrepresentations, undue advantage, oppression on the part of the one who obtains the benefit, or ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessities, and the like, on the part of the other, these circumstances, combined with inadequacy of price, may easily induce a court to grant relief, defensive or affirmative. It would not be correct to say that such facts constitute an absolute and necessary ground for equitable interposition. They operate to

throw the heavy burden of proof upon the party seeking to enforce the transaction or claiming the benefit of it to show that the other acted voluntarily, knowingly, intentionally, and deliberately, with full knowledge of the nature and effects of his acts, and that his consent was not obtained by any oppression, undue influence, or undue advantage taken of his condition, situation or necessities. If the party upon whom the burden rested should succeed in thus showing the good faith of the transaction, it would be sustained; if he should fail, equity would grant such relief, affirmative or defensive, as might be appropriate." 2 Pom. Eq. Jur. (3 Ed.), § 928 and cases cited.

According to the rule stated by Mr. Pomeroy and the facts in this case as stated in this opinion, appellee is entitled to the relief she seeks.

Decree affirmed.

HART, J., being disqualified, did not participate.