FRANK KUNDE et al., Appellants, v. ALICE O'BRIAN et al., Appellees.

No. 41290.

J‍une 24, 1932.

Lloyd L. Duke, for appellants.

Smith & Work, for appellees.

K‍INDIG, J.—On April 25, 1923, Frank Kunde and Anna L. Kunde, the plaintiffs-appellants, purchased from Alice O'Brian, the defendant-appellee, a house and lot in Ottumwa. The house was modern and contained eight rooms. This purchase was under a written contract naming a consideration of $4,800. Of that sum appellants paid appellee $1,000 in cash and the remaining portion of the consideration was to be paid at the rate of $50 per month. Those monthly payments were regularly made by appellants to appellee until April 1, 1926. No payment has been made on the purchase price by the appellants since that time, although they remained in possession of the house until October 4, 1930.

Appellants refused to make further payments on the purchase price after April 1, 1926, because it is alleged they learned that a driveway on the premises did not wholly belong to the property, but an adjacent owner had an easement to use the same. It is claimed by the appellants that when they purchased the property the appellee assured them that the driveway belonged thereto unincumbered. Consequently appellants refused to make further payments on the purchase price, and, on October 8, 1927, commenced the present proceeding for a rescission of the contract. Thereafter the case was tried, and on October 1, 1930, the district court entered a judgment and decree finding that the appellants had properly rescinded the contract, confirming such rescission, and placing the parties *in statu quo*. Then, on October 4 thereafter, the district court entered a sup-

plemental decree giving appellee immediate possession of the premises under the rescinded contract.

There is no objection on appellants' part to that portion of the judgment and decree confirming the rescission of the contract, nor do they complain of the supplemental decree which gave appellee possession of the property. Their complaint is confined to that portion of the judgment and decree entered October 1, 1930, which attempts to establish the status quo between the parties.

While it appears that there is more than one defendant in this case, yet, so far as material here, the appellee Alice O'Brian is the only person interested as defendant. She therefore hereafter will be referred to as the appellee.

That portion of the judgment and decree which attempts to place appellants and appellee *in statu quo*, so far as material, is as follows:

First: Appellants were given the $1,000 cash payment made at the inception of the contract, and all the monthly payments made at the rate of $50 per month thereafter, aggregating $1,750, together with certain interest payments amounting to $480. Then appellants were allowed interest on those sums from the time each item was paid until the rescission. In addition to the foregoing the district court allowed the appellants taxes paid on the premises as follows: March 24, 1924, $71.20; September 16, 1924, $71.21; March 18, 1925, $89.93; September 17, 1925, $70.97; March 16, 1926, $89.57. Furthermore the district court allowed the appellants interest on the taxes thus paid at the rate of six per cent per annum from the date of each payment until the rescission. Apparently the appellants have no complaint about the allowance of those items, nor the interest figured thereon.

Second: The appellee received, through the decree, rental on the premises, for the time it was occupied by appellants, at the rate of $50 per month, together with interest on each monthly rental from the time the same should have been paid in advance. When this rental is deducted from the amounts allowed the appellants, as above explained, the balance remaining is $220.38. This is the amount the appellants actually received in cash from the appellee under the judgment and decree.

So far as material here, three objections are made by ap-

pellants to the judgment and decree of the district court. These objections are: First, that no rentals at all should have been allowed appellee under the circumstances; second, in any event, the rentals thus allowed should not have been on the basis of $50 per month; and, third, the district court should have allowed appellants a sum for certain improvements which they placed on the house. The so-called improvement items were rejected by the district court.

I. Did the district court properly allow appellee rent for the property during the time the same was occupied by appellants? That is the first question.

At the inception, it is to be recognized that appellants are asking that the district court confirm their rescission of the real estate contract. While such application for the confirmed rescission is based upon the alleged fraud of appellee in misrepresenting the title to the driveway, yet the fraud, if any, was material · only for the purpose of justifying the district court in granting the relief. A rescission is such whether based upon fraud or some other cause. If appellants desired damages as distinguished from a rescission of the contract for the loss of their bargain, they should have asked that relief at law. Nevertheless appellants selected their remedy in equity and asked for a rescission of the contract. "Rescission is the unmaking of the contract." Butler Manufacturing Co. v. Elliott & Cox, 211 Iowa 1068 (local citation, 1071).

"No rights accrue to either party under the terms or provisions of the contract so rescinded." Bringolf v. Parkhurst Auto Co., 192 Iowa 1038 (local citation, 1041).

See also Mortensen v. Frederickson Brothers, 190 Iowa 832. Generally, however, the courts will not allow a rescission unless the parties can be placed *in statu quo.*

"When the buyer rescinds, he renounces the contract and his ownership of the property obtained thereunder, and invests the seller with the ownership as if the contract had not been made." Butler Mfg. Co. v. Elliott & Cox (211 Iowa, reading on page 1072), supra.

When the court allows a rescission, it founds its action, generally speaking, upon a previous mutual agreement to re-

scind or a fraud on the part of one party of the contract and the election to rescind therefor by the other party thereto.

"A court is not privileged to impose by judicial fiat an agreement of rescission upon the parties when it appears there was in fact no such agreement." Bringolf v. Parkhurst Auto Co. (192 Iowa 1038, local citation 1041), supra.

Hence a court of equity, when entering a decree of rescission, must recognize the foregoing legal principles, and, so far as possible, do equity between the parties. Before the buyer, however, can rescind the contract he "must restore, or offer to restore, the status quo. Until restoration or offer to make restoration is made, there is ordinarily * * * no rescission." Butler Mfg. Co. v. Elliott & Cox (211 Iowa 1068, local citation 1072), supra.

To the same effect see Mortensen v. Frederickson Brothers (190 Iowa 832), supra; Smith v. Eells, 191 Iowa 1307; Stauffer v. Mathison Motor Co., 207 Iowa 1038; Rickman v. Houck, 192 Iowa 340; Fowler v. Dieleman, 192 Iowa 563; Bringolf v. Parkhurst Auto Co. (192 Iowa 1038), supra; Continental National Bank v. Greene, 200 Iowa 568; Granette Products Co. v. Neumann & Co., 200 Iowa 572; Reiger v. Turley, 151 Iowa 491; Creveling v. Banta, 138 Iowa 47; Fritz v. Fritz, 141 Iowa 721; Mueller Lumber Co. v. McCaffrey, 141 Iowa 730.

This principle applies even though the rescission is based upon fraud. Stotts v. Fairfield, 163 Iowa 726; Reiger v. Turley (151 Iowa 491), supra; Fulton v. Fisher, 151 Iowa 429; Creveling v. Banta (138 Iowa 47), supra; 13 Corpus Juris 621, section 680.

"It is an elementary rule that placing *in statu quo* implies restoration of the party injured to as near the condition that existed prior to the making of the contract as possible." Rickman v. Houck (192 Iowa 340, at page 348), supra.

If it had not been for the contract, appellee, theoretically speaking, would have had the rentals from the premises during all the period appellants were in possession thereof under the contract. How, then, can appellee be placed *in statu quo* unless she has the equivalent of her right to the property during the period the appellants were in possession thereof, to wit, the

rentals therefrom during the time? These rentals would have been received by appellee, had it not been for the contract, each month during the period in question. Accordingly, to place the appellee *in statu quo,* it is necessary that she have rent for each month, together with interest thereon at six per cent from the accruing date. Otherwise appellee would not be placed in the position she would have been in had there been no contract. Moreover, appellants have enjoyed the use and benefit of the premises during the term in question. Their benefit in that regard will be appellee's loss unless appellee can be placed *in statu quo* in respect to the rental.

Obviously, then, the district court did equity in allowing appellee the monthly rentals plus the interest. Although the appellants deny the right of the district court to allow appellee the rent and interest, they, however, make no complaint concerning the accuracy of that tribunal's computation in figuring the rent on the basis of $50 per month and the interest thereon actually allowed.

II. The complaint interposed at this juncture is that the rental should not have been figured on the basis of $50 per month. Witnesses for the appellants testified that the reasonable rental for the premises would be $25 to $35 per month. A careful study of the record, however, discloses the fact that those witnesses are not entirely convincing. They apparently did not take into consideration all the facts and circumstances necessary for a conclusion.

On the other hand, appellee's witnesses declared that the rental value of the property is much higher than the figure placed therefor by appellants' witnesses. J. C. Blunk testified that the rental value of the property now would be $45 per month, but that during previous years of appellants' occupancy, such reasonable rental was $60 per month. Guy Kitterman said that a fair rental now would be between $40 and $50 per month, but that in 1923 $50 was a fair rental. George Davidson declared that a fair rental for the premises would be from $45 to $50 per month in advance. However, this witness stated that rental values for previous years were higher. Anna Murphy asserted that the rental value is $50 per month.

When the testimony of appellee's witnesses is considered as a whole, it is manifest that a fair estimate of the rental values

placed by them covering the entire period would be approximately $50 per month. So, for the purpose of fixing an equitable basis on which to determine the rights of the parties in the event of rescission, the district court properly adopted the rental value of $50 a month.

III. As before suggested, the appellants object because the district court did not allow them for improvements made on the premises. It appears without material controversy that during the years of occupancy, the appellants did place permanent improvements on the house and lot. There seems to be no good reason why a proper allowance should not be made for this. See Davis v. Strobridge, 6 N. W. 45 (Mich.) ; Rhodes v. Stone, 76 S. W. 533 (Ky.).

After carefully studying the record, it occurs to us that an allowance for those improvements, together with interest thereon, would fairly and reasonably amount to approximately $300. That is the sum we now fix therefor. Consequently this additional item should be, and is, added to the $220.38 which the district court in its judgment and decree allowed appellants to recover from appellee. Thus the total sum which the appellants can recover from appellee under the aforesaid judgment and decree is $520.38. To that extent, then, the judgment and decree of the district court is modified. Each party shall pay one-half the costs on this appeal.

Wherefore, the judgment and decree of the district court, as thus modified, should be, and hereby is, affirmed.—Affirmed.

WAGNER, C. J., and EVANS, MORLING, and GRIMM, JJ., concur.