WOOD *v.* SMITH.

5-578                275 S. W. 2d 1

Opinion delivered February 7, 1955.

*J. L. Bittle* and *Yingling & Yingling,* for appellant.

*Chas. F. Cole,* for appellee.

GRIFFIN SMITH, Chief Justice. The appeal is from judgment on a jury verdict which found that neither litigant should recover from the other.

Smith was the owner of a portable sawmill, and when sued for the balance due on an account he cross-complained. Wood bought and sold lumber. To facilitate these operations he would frequently advance money for Smith's use in acquiring tracts of timber. The latter would move his mill to a convenient location and convert the trees into a marketable product.

Necessarily the rough lumber was worth more than the standing timber, hence Smith would be charged with the money advanced and credited with the lumber he shipped to Wood or on his direction. By this process net credits might accrue on a particular transaction, or Smith might receive payments sufficient to adjust the differences. The inference is that the balance due *to* Smith, or *by* him, varied with intervening undertakings: that is, the obligation one way or another would shift when an additional survey of timber would be bought by Smith with Wood's money, or purchased directly by Wood with an understanding that it should be cut and sawed by Smith.

The complaint asserts an agreement of the parties that Smith owed Wood a designated balance of slightly more than $60 January 1, 1948. During 1949, and until Dec. 23, 1950, mutual charges and credits continued, with the result that Smith owed Wood $829.32. In addition to purchasing timber, Wood sold and serviced tools and appliances used by timber-cutters, but charges of this nature against Smith are small.

December 7, 1949, Wood charged Smith with $2,000, the book entry being "Cash, Collins timber".

Appellant and appellee were operating under oral agreements reflecting seeming accord until July, 1953, when Wood sued for what he contended was the net

balance of $829.32. Smith's denial was supplemented by a cross-complaint for $900 based on Wood's failure to make available all of the timber on 945 acres in Cleburne county for which Wood paid $2,000 to T. O. Collins. Before Wood made the purchase Smith had been negotiating with Collins, who said that he was not, at that time, ready to sell. Smith says he reported this fact to Wood with the suggestion that the latter might be able to close the proposed deal. Wood saw Collins and closed the contract by oral accord. After sending the seller his check the item was charged to Smith.

Informality of the Wood-Collins discussions and the reliance of each upon the other's word brought about the misunderstanding between Smith and Wood. Smith testified that Wood told him that as to the timber on all of the 945 acres, "he had bought every bit of it".

Collins testified that when Wood made his second or third trip in an endeavor to buy the timber he informed Wood that Smith wanted the property and that he (Collins) had assured Smith that he would have first chance if a sale should be made. Wood replied that he was buying for Smith. Although payment was not made for three or four weeks, Smith treated Wood's representations as an assurance that the purchase included the timber he had discussed with Collins. A man named Capps told Wood that [he or some one else] had prepared a deed—"but," said Collins, "I've never seen it". Smith testified that he looked at the deed in order to get descriptions, and that it included the area in dispute.

When Smith persisted in cutting timber from land "south of the road" Collins procured an injunction. Collins, of course, insisted that this timber was not sold and Smith is equally positive that it was a part of the 945 acres he had first discussed with Collins, and that Wood told him the $2,000 paid for "all of it".

By amendment to his complaint, filed March 15, 1954, Wood mentioned other transactions, but the contention on appeal is bottomed on Smith's loss through

Wood's failure to procure title to sixty or seventy thousand feet of timber. Matters urged as prejudicial are under three headings, abstracted in the margin.[1].

I. Smith's cross-complaint asserted that it was the plaintiff's duty "to secure the timber to be cut and manufactured into lumber by the defendant". The "duty" alleged involved Woods' failure to obtain title to the disputed area.

While the cross-complaint is wanting in language completely expressing Smith's cause of action, this vice could have been reached by motion to make more definite and certain. In the absence of such a motion it must be presumed that the cross-defendant was not without information as to the nature of the claim. The language is sufficient to suggest a legal duty upon Wood's part to fulfill a contractual obligation, and his failure to do so.

II. The jury elected to believe—or at least to act upon—Smith's version of the controversy. If we were determining the issues on preponderating testimony rather than substantial evidence the appellee's right to prevail would be doubtful. But there was, in Smith's explanations of his conversations with Collins, and his later dealings and understandings with Wood, testimony of a character the jury had a legal right to consider, and an appellate court is bound by that determination.

III. Form of the verdicts the court told the jury it might return did not differ except that in one "defendant" appeared, and in the other "plaintiff." Each was returned, signed by the foreman, the findings being that the claimant should recover "in the amount of $0.00." Judgment entered on the verdicts denied a recovery to either party. The cost Wood had incurred was adjudged against him, and the defendant was required to pay his cost.

The verdict forms were read to the jury. This action of the court was not objected to. There was, how-

[1] The court erred in refusing to sustain plaintiff's demurrer to the defendant's cross-complaint; (2) in refusing to instruct for the plaintiff, and (3) the judgment is contrary to the verdict.

ever, a general objection to the judgment, with notice of appeal.

Doubtless the court did not anticipate that the jury would make a specific finding against each litigant. But the practical effect of the neutralizing verdicts was to say that if Smith owed Wood on the old balance his failure to supply the timber was a default sufficient to offset the amount Wood contended for.

Affirmed.