ROYAL SERVICE COMPANY *v.* WHITEHEAD
CONSTRUCTION COMPANY, Inc. and FIDELITY
And DEPOSIT COMPANY Of MARYLAND

5-6236                                           492 S.W. 2d 423

Opinion delivered April 9, 1973

*Jones, Matthews & Tolson,* for appellant.

*Anderson & Crumpler,* for appellees.

J. FRED JONES, Justice. This is an appeal by Royal Service Co. from an adverse circuit court judgment on a jury verdict in a suit by Royal against Whitehead Construction Company and its bondsman, and a counterclaim by Whitehead against Royal.

The facts appear to be as follows: Whitehead was the general contractor for the construction of a building at Southern State College. By written contract dated February 18, 1971, Whitehead sublet the mechanical work on the building to Royal as a subcontractor for the price of $94,006. Whitehead required the subcontractor Royal to carry its own liability and workmen's compensation insurance and among other provisions of the contract Article 9 provided in part as follows:

"Prior to starting work the required insurance shall be obtained from a responsible insurer, and satisfactory evidence shall be furnished to the Contractor that the Subcontractor has complied with the requirements of this Article 9."

The subcontract further provided that the evidence of insurance should consist of "Insurance Certificates," and that the time of commencement and completion of the work was to be the essence of the contract unless extended by the contractor's written consent. The commencement date was designated as February 18, 1971, and the completion date as December 24, 1971.

Royal moved a tool house onto the construction site, ordered some materials and obtained shop drawings necessary to the performance of its subcontract, but it failed to furnish certificates of insurance. On June 3, 1971, Whitehead discharged Royal and directed him to remove his tool house and materials from the job.

Royal filed suit against Whitehead alleging that he had proceeded with his work as provided in his subcontract and had completed so much of the work as could be done in the state of progress of the general

contract when it was wrongfully discharged by Whitehead. Royal alleged damages and prayed judgment in the amount of $9,542 for loss of profit and $1,677.98 for labor performed and materials furnished. Whitehead answered by general denial and in counterclaim alleged that Royal failed and refused to comply with the terms of the subcontract by furnishing certificates of insurance as required therein and performing the services required thereunder. Whitehead alleged that because of Royal's failure and refusal to comply with its contract, Whitehead was forced to purchase and install ducts at a cost of $1,250, and was forced to discharge Royal and secure the services of another subcontractor at an additional cost of $5,576, exclusive of the duct work, and Whitehead prayed judgment for $6,826. A jury trial resulted in a judgment for Whitehead on Royal's complaint and for Whitehead on its counterclaim but with no damages to Whitehead.

On appeal to this court Royal first contends that the trial court erred in permitting Whitehead to introduce testimony of non-performance by Royal on matters which Whitehead had not pleaded as breaches of contract. We find no merit in this contention. Royal alleged in its complaint that it had proceeded with the work as provided for in the contract and had completed so much of the work as could have been done in the state of progress of the work on the general contract. Whitehead denied these allegations and affirmatively alleged breach of contract by failure to furnish certificates of insurance and to perform the services required under the contract.

Ark. Stat. Ann. § 27-1155 (Repl. 1962) provides as follows:

"No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Whenever it is alleged that a party has been so misled, that fact must be shown to the satisfaction of the court, and it must also be shown in what respect he has been misled; and thereupon the court may order the pleading to be amended upon such terms as may be just."

In Ark. Stat. Ann. § 27-1160 (Repl. 1962) is found the following language:

". . .when the allegations of a pleading are so indefinite or uncertain that the precise nature of the claim or defense is not apparent, the court may require the pleading to be made definite and certain by amendment. The court must, in every stage of an action, disregard any error or defect in the proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

In *Wood* v. *Smith*, 224 Ark. 589, 275 S. W. 2d 1, this court said:

"While the cross-complaint is wanting in language completely expressing Smith's cause of action, this vice could have been reached by motion to make more definite and certain. In the absence of such a motion it must be presumed that the cross-defendant was not without information as to the nature of the claim. The language is sufficient to suggest a legal duty upon Wood's part to fulfill a contractual obligation, and his failure to do so."

See also *Bonds* v. *Littrell*, 247 Ark. 577, 446 S. W. 2d 672, and *Young* v. *Moore*, 251 Ark. 296, 472 S. W. 2d 100.

We are of the opinion that the allegations of the counter-claim were sufficient to permit the introduction of the testimony relating to the breach of contract, even if it were not, there was no prejudicial error. The trial court, in its discretion, may permit a new issue to be introduced during the progress of the trial. *Gardner* v. *Farmers Electric Co-op Corp.*, 232 Ark. 435, 338 S. W. 2d 206. The court may admit evidence in support of such an issue and, if necessary, give the adverse party an opportunity to prepare to meet it. *Jonesboro Coca-Cola Bottling Co.* v. *Holt*, 194 Ark. 992, 110 S. W. 2d 535. Here, there was no plea of surprise or suggestion that appellant needed additional time. Furthermore, the evidence was offered to show that appellant's contentions about his

wrongful discharge were untrue and it tended to disprove facts essential to appellant's cause of action. The evidence was also admissible on this ground. *Andrews* v. *Victor Metal Products Corp.*, 241 Ark. 889, 411 S.W. 2d 515.

Royal next contends that the trial court erred in permitting introduction of written reports to corroborate Whitehead's witness. The reports referred to were progress inspection reports made by Mr. M. W. Calhoun, inspector for the architect, and they were objected to on the ground they were hearsay and irrelevant to the issue. Apparently the trial court felt that these progress reports were offered and admissible as memoranda or records made in the regular course of business under Ark. Stat. Ann. § 28-928 (Repl. 1962) and we are unable to say that the trial court erred in this regard. While § 28-928 makes certain business records admissible in evidence, it does not make such evidence either material or relevant. The evidence was material and relevant in this case because Whitehead testified that copies of some of the reports were handed to Mr. Ted Queen (the president, manager and principal owner of Royal), and their content tended to controvert Queen's testimony that his services had not been needed prior to his discharge, or that he had not been called upon to render any.

Royal next contends that the trial court erred in refusing to give its requested instructions Nos. 12 and 13. These requested instructions would have told the jury that if they should find that Royal had rendered substantial performance of the contract up to the time of the cancellation, Whitehead would not be justified in canceling the contract. Requested instruction No. 12 would also have told the jury that substantial performance permits enumerated omissions or deviations from the contract and may, without injustice, be compensated for by deductions from the contract price. Requested instruction No. 13 would have told the jury where work has been done substantially in compliance with the terms of a contract, or accepted by the other party, there is no substantial breach of the contract, and cost of correcting defects would be deducted from the payments to be made under the contract. We find no error in the refusal of

these instructions. In the first place, we find no substantial evidence of substantial performance, and in the second place, the authorities relied upon by the appellant in support of the instructions emphasize waiver by the party attempting to cancel. See *Reynolds* v. *Ashabranner*, 212 Ark. 718, 207 S.W. 2d 304; *Arkansas Lumber* v. *Benson*, 92 Ark. 392, 123 S. W. 367; *Grayling* v. *Hemingway*, 128 Ark. 535, 194 S. W. 508. We do not deem cases relating to minor deviations or omissions to be applicable to the evidence in this case.

In its last assignment of error Royal contends that the court erred in permitting Whitehead's witness to construe an insurance policy not in evidence and in violation of the best evidence rule, and in violation of the further rule that construction of insurance policies is a matter of law for the court.

Mr. John Dexter, Whitehead's insurance agent, was called as a witness for Whitehead. He testified on direct examination that on June 3, 1971, Mr. Queen made application to him for liability and workmen's compensation insurance and that he attempted to obtain insurance coverage for Royal but was unable to do so. He said he explained to Mr. Queen that he could place his compensation coverage if Whitehead was willing to endorse it and would be fully responsible for the premiums, the experience and everything, but that he could not write the liability insurance under any condition. He said that Mr. Queen told him that the coverage he had under binders had either terminated or would terminate within a few days and would not be extended, and that he couldn't go on the Whitehead job with the binders. He said that this particular job was a federal job and the architects were real strict on the requirements of insurance to make sure that federal standards were complied with.

On cross-examination this witness testified that he called Mr. Whitehead and inquired about putting Royal under Whitehead's policy and that Whitehead refused to permit him to do so. The testimony on cross-examination then continued as follows:

"Q. So you did discuss with him that you could provide insurance to him under Mr. Whitehead's policy if Mr. Whitehead was agreeable?

A. Only one policy, compensation — liability I could not.

Q. Well, didn't you already have the coverage under liability for the whole job?

A. Not for Queen.

Q. But the general contractor, excuse me, — do you have a policy with you?

A. No sir.

Q. Or your daily as to, — anything that you would say now about whether plumbers or electricians or air condition people, that would just be strictly out of your head wouldn't it?

A. Not necessarily. Under a workmen's compensation policy if a subcontractor does not provide coverage the general contractor automatically provides coverage under Arkansas law. Under liability it is a different situation.

Q. So as far as the workmen on the job the Whitehead policy would provide coverage at the very outset of the contract, it was providing coverage wasn't it?

A. Providing coverage for Whitehead, yes sir.

Q. All right, and if it developed that Ted Queen didn't have a workmen's compensation policy you had coverage for him too didn't you?

A. Through Whitehead, yes sir.

Q. Through Whitehead?

A. For workmen's compensation only."

As to the testimony on redirect to which Royal assigns error, the record is as follows:

"Q. You have testified that under no circumstances would the liability insurance that you had written for Mr. Whitehead would it cover Ted Queen on this job.

MR. JONES: Your Honor, I am going to object to it, he doesn't have the policy and he has been objecting to these other folks interpreting contracts, so I will object to this one too.

THE COURT: Overrule your objection.

Q. Would you answer the question?

A. Mr. Whitehead's policy provides, his liability provides him coverage only."

The appellant Royal cites several cases on the "Best Evidence Rule" but we conclude that the "Best Evidence Rule" does not apply to the evidence in this case. As the above testimony will indicate, the question of whether Royal was covered under Whitehead's policies was first brought out on cross-examination by Royal's attorney. Mr. Dexter testified that he wrote Whitehead's insurance and as we interpret his testimony, he was not asked to interpret a provision of an insurance policy. He simply testified that the policy he wrote provided liability coverage for Whitehead only.

In connection with the insurance, on May 5, 1971, Mr. Whitehead wrote to Royal as follows:

". . .if you will look at your contract it says you must furnish us with a copy of your insurance we have not received it as of this day. You or your men will not be allowed back on this job until we receive same."

On May 11, 1971, in regard to the insurance, Royal's letter to Whitehead states:

". . .We have been talking with an insurance man

& he keeps promising to mail same. We feel sure you will have it this week. However, the delay is not all his fault as we were making some changes & changing the company also."

Then on May 18, 1971, Mr. Whitehead wrote to Royal as follows:

"As per our telephone conversation last evening you have until Friday, May 21, 1971 to furnish this office with the necessary Insurance coverage as per specifications and also a Performance Bond for the complete Mechanical contract.

If the above is not carried out by Friday, please remove your tool house and material off of the above job no later than May 24, 1971."

Then on June 3, 1971, Mr. Whitehead wrote his final letter to Royal as follows:

"This letter will officially discharge you as the Mechanical Contractor on above reference job.

We regret you were unable to furnish the necessary Insurance and perform the work as per your contract.

You have broken your contract in several different ways. We have been out untold expense of having to wait on you.

Please remove your tool house and small amount of material you have on hand.

Miller Plumbing Company has agreed to help us out and assume your contract. They will start work this day."

It is clear from the overall evidence in this case that Royal was required under its contract to obtain its own liability and compensation insurance coverage on the job and present to Whitehead certificates of insurance as evidence of its compliance before proceeding in the perform-

ance of the work under its subcontract. The evidence is also clear that Royal could not, or did not, comply with this provision of its contract until after it was discharged.

The judgment is affirmed.