Philip C. BATES and Shirley J. BATES
*v.* George R. SIMMONS and Jewel Ann
SIMMONS

75-389                                              536 S.W. 2d 292

Opinion delivered May 3, 1976

*Gean, Gean & Gean,* by: *Roy Gean Jr.* and *Lawrence W. Fitting,* for appellants.

*N. D. Edwards,* for appellees.

JOHN A. FOGLEMAN, Justice. Appellants brought this action to rescind a contract for the purchase of property from the appellees, asserting misrepresentation, mutual mistake and failure of consideration. The contract was entered into on November 24, 1969. For a consideration of $17,500, payable at the rate of $150 per month, plus interest, and an additional payment of $500 per year beginning in 1970, the Simmonses sold the Bates property described as:

> All of Block D, Town of Graphic, Arkansas, including the store building, dwelling house and all other structures and improvements of every kind, sort and description situated on said property. . . .

The store building was not located on Block D, but on adjacent property, and the purchasers were put in possession and occupied a dwelling house on Block D and the store building at least until May, 1975, when they were evicted from the store building by William Roberts, who had purchased the land on which the store building was located at a sale for partition among the owners. The Bates purchase was made upon the representation that the Simmonses held a 99-year lease on the store building site.

Appellants made all payments called for in the contract prior to the eviction and met all other contractual obligations except for keeping the property insured against loss by fire and windstorm. Appellants filed this suit shortly after the eviction, alleging that the store building was material to the bargain and that, because there was a fatal defect in the seller's title thereto, appellants had sustained "damages" in the sum of $12,400. This figure, however, represented the total payments made by appellants under the contract and appellants actually sought to return the lot purchased and the dwelling house, cancel the contract and recover these payments.

Appellees answered with a counterclaim labelled "cross-complaint," alleging that appellants had breached the contract by failing to carry insurance on the property after July 16, 1971, and by disposing of store fixtures and equipment. Appellees asked that the contract be terminated and that they have judgment for the balance due under it.

The chancery court, by decree, found appellants had defaulted in the performance of the contract by failing to keep the property insured and that appellees had defaulted because they were unable to deliver the store building and held that the contract became null and void in March, 1975, at the time of the purchase of land on which the store building was located by Roberts. The court held that appellants occupied the premises as tenants after March 1, 1975, and entered judgment in their favor for monthly payments in excess of $100 per month made thereafter and prorated the annual payment. The court also decreed that all prior payments made by appellants under the contract be treated as rent, and that damages to the two parties were too nearly equal to permit the award of any judgment in any specific amount to either. Appellants were given 30 days within which to vacate the property.

Appellants' first point for reversal is the action of the chancellor in allowing appellees to amend their pleadings at the conclusion of the evidence on behalf of appellants. Actually the motion was made at the very beginning of the trial, when appellees made an oral request that their pleadings be

amended to ask allowance of credit against any recovery by appellants for the cost of restoring the house to its condition when sold, for the store business and fixtures and for the reasonable rental value of the property. The chancellor took this oral motion under advisement, but granted it after denying appellees' motion to dismiss the complaint for insufficient evidentiary support.

Appellants complain that this request came some three months after issue was joined and radically changed the cause of action for foreclosure under the contract originally asserted in appellees' pleadings. In considering the court's action, we note that a variance between pleading and proof is not to be considered as material unless it had actually misled the adverse party and that the court may, at any time, in the furtherance of justice, amend any pleadings by inserting new allegations material to the case, upon such terms as may be proper. Ark. Stat. Ann. § 27-1155 (Repl. 1952) and 27-1160 (Supp. 1975).

The chancellor in allowing the amendment offered appellants a continuance if they were taken by surprise, but their attorney stated that they would like to dispose of the case on that day and did not want to take any additional time unless absolutely necessary. We note that both appellant Philip Bates and an expert witness testified on behalf of appellants as to rental values.

We will not reverse the trial court's action on requests for amendment of pleadings at the trial unless there has been a manifest abuse of discretion and material prejudice to the adverse party. *Rucker* v. *Martin, Phillips & Co.,* 94 Ark. 365, 126 S.W. 1062; *Cole* v. *Branch & O'Neal,* 171 Ark. 611, 285 S.W. 353. See also *Hogue* v. *Jennings,* 252 Ark. 1009, 481 S.W. 2d 752. Since appellants were seeking a rescission, the parties were entitled to be placed, as nearly as circumstances would permit, in their respective positions at the time of the sale. *Berland's Inc. of Tulsa* v. *Northside Village Shopping Center,* 447 P. 2d 768 (Okla., 1968); *Cruse* v. *Clawson,* 137 Mont. 439, 352 P. 2d 989 (1960); *James* v. *Hogan,* 154 Neb. 306, 47 N.W. 2d 847 (1951). An amendment specifically requesting that this be done in the manner asked did not so substantially change the

issues that allowing the amendment was an abuse of discretion unless it could be said that appellants had been so misled that the court's action took them by surprise. The court's offer of a continuance was proper under the terms of Ark. Stat. Ann. § 27-1160. The failure to take advantage of it or to ask for a continuance after appellants' evidence was heard certainly indicates that appellants' surprise was not so great that they felt unable to controvert appellees' evidence on this point. We find no manifest abuse of discretion in the court's action. See *Royal Service Co. v. Whitehead Construction Co.*, 254 Ark. 234, 492 S.W. 2d 423.

It appears to us that there was error in the holding that appellants were in default for failure to keep the property insured. We find a clear preponderance of the evidence to indicate that the failure to carry this insurance for some four years was known to Mr. Simmons. The insurance was cancelled in July, 1971, because the carrier discontinued the writing of such insurance in unincorporated areas, such as Graphic. When this was reported to Simmons, he requested that Mr. Bates obtain insurance elsewhere. Bates testified that he was able to find only one company writing this insurance in Graphic, but the premium was $54 per year per $1000 of value as against $8 previously paid. Bates testified that when Simmons inquired he told Simmons he could not afford the insurance at this price, and that Simmons neither objected nor requested Bates to obtain the insurance or to surrender the property. Simmons does not appear to have actually denied this testimony. He did say that he never told Bates that he did not require insurance. It does clearly appear that appellees did not assert any rights arising from this alleged default until they filed their "cross-complaint" in this case. Any error in this respect, however, is harmless because a clear preponderance of the evidence shows appellants' entitlement to rescission and the trial court did not give judgment for the balance due under the contract. Rather than do so, the court attempted to restore the parties to the situation in which they were when the contract was made.

Appellants also complain of the trial court's finding that they were in default for failure to defend the title to the store

building. The evidence shows that Mr. Bates had discussed the situation with Mrs. Simmons shortly after the service of process in a partition suit brought by co-owners of the land on which the building was located. He had given her a copy of it, which she promptly returned. No formal demand was made upon appellees to defend the title. Mr. Bates testified that he asked Mr. Simmons to deliver a copy of the 99-year lease to the attorney for the plaintiffs in the partition suit. He said that he took no other action to protect his rights relative to the store building because this attorney assured him that the store building belonged to the Bateses and that the land beneath it was not involved in the partition suit. He also stated that the heirs who were parties to the partition suit had agreed that he was entitled to use the store building site under a 99-year lease. This lease had not been mentioned in the contract of sale, no assignment of it to appellants was ever made, and Mr. Bates only asked Mr. Simmons to put a piece of paper purported to be the lease in a safety deposit box. Appellants took no steps to defend the partition suit, or to intervene in it, to remove the building or to contest the right of the purchaser at the partition sale to possession of it. There was evidence that the building could have been moved onto Block D.

Even if there were a duty on the part of the appellees to defend in the partition suit, appellants might well have acted to preserve their rights or minimize the loss, at least by attempting to remove the store building before the partition sale. Not having done so, they are in no position to complain about the chancery court's holding in this regard, particularly in view of the fact that there was no cross-appeal from the chancellor's holding appellees were also in default for failure to defend the title to the store building. *Lindenborg* v. *M & L Builders and Brokers, Inc.,* 302 N.E. 2d 816 (Ind. App., 1973). Cf. *Baston* v. *Davis,* 229 Ark. 666, 318 S.W. 2d 837; *Childress* v. *Tyson,* 200 Ark. 1129, 143 S.W. 2d 45.

Appellants say that the chancellor erred in holding that damages to the parties were too nearly equal to award any judgment to either. But appellants conclude the argument by pointing out that neither party pleaded or proved damages. Since this is true, any error in harmless.

The most difficult question presented on this appeal arises from appellants' contention that the chancellor erred in considering the payments made under the contract as rent. We have concluded that the evidence does not support this holding. As we have pointed out, any liability based on contract terms that might have resulted from appellants' failure to carry insurance is unfounded. As appellees pointed out, both parties ultimately asked that the contract be cancelled and rescinded, and the problem to be resolved was restoring the status quo, as nearly as possible. This was not to be easily accomplished because appellants had occupied and used the property for more than five years, during which time all payments called for by the contract had been made. It was stipulated that 68 monthly payments of $150 and five annual payments had been made and that the total amounted to $12,700. Possession had been held by appellants for 70 months. Witnesses for appellees placed the average rental value of the dwelling house during this period at $100 per month. A witness for appellants placed it at $37.50 per month. Appellants occupied the store building 64 months. Appellees' expert witness fixed the rental value of this building at $75 per month, as against $37.50 per month stated by appellants' expert.

Clearly appellees were entitled to be restored to the property sold. After five years of use and occupancy, it is hardly reasonable to say that by merely surrendering it to appellees, appellants had restored them to their precontract condition. But this restoration or return to status quo is governed by equitable principles, so applied in each case as will best subserve the undoing of wrong. *Dermott Land & Lumber Co.* v. *Walter A. Zelnicker S. Co.,* 271 F. 918 (8 Cir., 1921); *Berland's Inc. of Tulsa* v. *Northside Village Shopping Center,* supra. Although Mr. Bates testified that the physical condition of the house at the time of the trial was comparable to its physical condition at the time he took possession, for some reason he said that he did not feel that he was required to return or restore the property in the same condition that he received it and added that any deterioration had been due to natural aging and not because of abuse or neglect. On the other hand, Mr. Simmons testified that the house had been remodeled at the time the contract was entered into but was

considerably run down at the time of the trial, and pointed out specific items that would require repairs, replacements and renovation. The expense for this restoration was not shown. The testimony of the expert witnesses as to the present value of the house and lot varied widely. Appellees' expert valued it at $17,500, except for ordinary wear and tear since the sale. He did not state what the value would have been if the normal depreciation had been taken into consideration. It was his opinion that the property was worth $10,000 at the time of the sale. Appellants' expert was of the opinion that the present value of the house was only $6,000. We would be unable to say from the evidence what adjustment, if any, should be made for restoring the dwelling house to its previous condition.

The chancellor decreed that appellants pay rent to appellees at the rate of $100 per month from the date of eviction. We consider this a finding that the current rental value was at that rate. It was the average rental value during appellants' occupancy as fixed by appellees' expert. It is considerably in excess of the rental fixed by appellants' expert. The basis each of these witnesses used was subject to question because neither found a really comparable situation on which to base his opinion. The chancellor's finding seems to accord more weight to the testimony of appellees' expert, and we cannot say that it was erroneous to do so. In view of the very indefinite testimony about the relative condition of the property and its comparative value, and the lack of evidence of costs of repairs, it seems that the only practical means of restoration to appellees is by allowance of rent. Certainly, the requirement that appellants, as purchasers, pay rent to appellees, the sellers, for the time appellants occupied the property is equitable. *Troxell* v. *Sandusky,* 247 Ark. 898, 448 S.W. 2d 28.

For the house, we have arrived at the conclusion that the chancellor's finding as to rent to be paid after March 1, 1975, is fairly representative of average rental values over the period of occupancy by appellants. Appellants were also liable for interest on the rental value for each month. Otherwise, appellees would not be restored to status quo. *Lutz* v. *Cunningham,* 240 Iowa 1037, 38 N.W. 2d 638 (1949); *Kunde* v.

*O'Brian*, 214 Iowa 921, 243 N.W. 594 (1932); *Halcomb v. Ison*, 140 Ky. 189, 130 S.W. 1070 (1910). See also, *Storthz v. Williams*, 86 Ark. 460, 111 S.W. 804.

This brings us to the problem of the store building. Its use as a store was discontinued by appellants in October, 1974, for economic reasons. Thereafter, appellants used it for storage of insulation used in a business commenced by Mr. Bates, and he said that it was useful for that purpose. But it developed that appellees had never been in position to deliver title to it, because the lease for the land it occupied had expired in 1963. In spite of this, the landowners seem to have laid no claim to the building but the purchaser at their partition sale successfully obtained possession of it. Obviously, appellees had possession of the building in 1969 or they could not have delivered possession to appellants, who had the use of it at all times for 68 months.

When the contract is rescinded because of the failure of the vendor's title, he cannot ordinarily recover from the purchaser for the use and occupation, prior to rescission, of the land to which the title failed. *Hough & Wood v. Birge,* 11 Vt. 190 (1839); *Griffith v. DePew*, 3 A K Marsh (Ky.) 177, 13 Am. Dec. (1820). Upon rescission in equity, the courts require the purchaser in possession to account for rents during his occupancy as an offset to, or abatement of the consideration recovered, only when it appears that the purchaser cannot be made liable therefor to the owner of the paramount title to the property. *Curtis v. Brannon,* 98 Tenn. 153, 38 S.W. 1073, 69 LRA 760 (1897). When the purchaser is accountable to the actual owner for rents, the offset is not allowed. *Webb v. Conn,* 1 Litt (Ky.) 83, 13 Am. Dec. 225 (1822).

Applying equitable principles, appellants are entitled to recover the purchase money paid, with interest from the date of each payment. *Shelton v. Ratterree,* 121 Ark. 482, 181 S.W. 288. There should be credited against this total, the rental value of the dwelling house and grounds ($100 per month) with interest on the rental value for each month. No credit should be allowed for use and occupancy of the store building.

We conclude that appellees are not entitled to have the value of the store fixtures and the good will of the business they had been conducting there as part of their restoration to the position they occupied at the time of the sale. These were not a part of the property sold under the contract. Mr. Bates testified that he bought the stock, fixtures and equipment for $4,000 by a separate agreement and paid George R. Simmons by check for that amount on November 14, 1969 and exhibited the check. Simmons claimed that this payment was for inventory alone and did not include fixtures of the value of $2,000, most of which were probably not permanently affixed to the building. According to Simmons, these fixtures were a part of the property sold under the contract, but we do not agree with him that they should be considered as "structures and improvements" under the written contract, and we are inclined to accept appellants' testimony in view of the fact that these items are not described in the contract.

Since real estate is involved, we remand the case to the chancery court for the entry of a decree consistent with this opinion.